

Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
keker.com

**R. James Slaughter**
(415) 773-6623
rslaughter@keker.com

April 21, 2021

The Honorable Jacqueline Scott Corley
United States Magistrate Judge
450 Golden Gate Avenue
San Francisco, CA 94102

Re: **Joint Statement Regarding Discovery Dispute – City Attorney Custodians**
*Kirkpatrick v. City of Oakland, CA*; U.S.D.C. CAND Case No. 3:20-cv-05843-JSC

Dear Judge Corley

Plaintiff Anne Kirkpatrick ("Plaintiff") and Defendant City of Oakland ("Defendant" or "the City"), hereby submit the following Joint Statement Regarding Discovery Disputes regarding the collection, review and production of documents by certain City Attorney Custodians.

The parties look forward to your assistance in resolving this dispute.


Very truly yours,

KEKER, VAN NEST & PETERS LLP


*s/R. James Slaughter*

R. James Slaughter


Very truly yours,

COBLENTZ PATCH DUFFY & BASS LLP


*s/Katharine Van Dusen*

Katharine Van Dusen

The Honorable Jacqueline Scott Corley
United States Magistrate Judge
April 21, 2021
Page 2

**I.   Plaintiff's Position**

Employees of the Oakland City Attorney's Office are central percipient witnesses to many of the factual allegations in this case. Indeed, Plaintiff intends to depose at least three members of the City Attorney's Office: Barbara Parker, Ryan Richardson, and Allison Dibley. The City, however, has only committed to collecting documents from a single member of the City Attorney's Office (Ryan Richardson), and it refuses to properly log Mr. Richardson's (or any other City Attorney's) communications. Plaintiff requests that the Court order the City to collect, review and produce documents from these three custodians and to provide a complete log of describing any documents withheld as privileged.[1]

There is no question that these custodians may have authored nonprivileged information relevant to Plaintiff's claims and defenses. Barbara Parker is the City Attorney and the recipient of many of Plaintiff's whistleblower complaints. Ryan Richardson is the City's liaison to the Police Commission and regularly interacted with Plaintiff regarding issues alleged in the Complaint. Allison Dibley represented the City Attorney's office at Police Commission meetings until she ceased attending meetings after facing a torrent of abuse from commissioners. Plaintiff's complaint regularly and repeatedly references her contacts with members of the City Attorney's Office regarding her whistleblower activities. *See, e.g.* Compl. ¶ 27, 34, 72. Barbara Parker and Ryan Richardson were listed on the Plaintiff's initial disclosures, and publicly available documents show that members of the City Attorney's office, including Allison Dibley, were percipient witnesses to the events surrounding Chief Kirkpatrick's illegal termination. *See, e.g.* PII Investigation, p. 34 (City Attorney Allison Dibley detailing an incident where Commissioner Harris "lied about what Dibley had [previously] said."); *see also* Ruby Report p. 52-53 ("We also observed that the Commission has refused to listen to the advice of the City Attorney's Office on issues such as compliance with the Brown Act."); *see also* 4/17/18 Kirkpatrick Memorandum ("[three Office of the City Attorney attorneys]…have all seen the [Pawlik shooting] video and they, too, did not think the shooting itself seemed to be out of policy.").

The City is refusing to collect documents from these witnesses because it claims that such a collection would be "burdensome" and "unreasonable." The City's position is that it is Chief Kirkpatrick's responsibility to first identify "non-privileged, non-redundant documents" that City Attorney custodians may have. Only then will the City even contemplate searching the files of those attorneys. With respect to logging communications, the City's only argument seems to be that creating such a log would be burdensome and time consuming.

These demands run counter to Federal Rules, this Court's standing order, and common sense. The City should be ordered to follow the plain language of the Federal Rules of Civil Procedure, conduct a reasonably diligent review of its files, and produce to Plaintiff

---

[1] Plaintiff reserves the right to seek documents from additional custodians if circumstances warrant.

The Honorable Jacqueline Scott Corley
United States Magistrate Judge
April 21, 2021
Page 3

nonprivileged matter that is relevant to Chief Kirkpatrick's claims and defense. *See* Rule 26(b)(1). The City should also be ordered to log those communications pursuant to Rule 26(b)(5) and this Court's standing orders. The creation of such a log is necessary for the City to make it prima facie showing that any claimed privilege applies to a given set of documents or communications; not requiring such a log would impermissibly shift that burden. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1070-71 (9th Cir. 1992). A log is particularly important in this case, where the City has already attempted to claim privilege over plainly non-privileged communications – including Chief Kirkpatrick's whistleblower complaints themselves.

The City claims that Chief Kirkpatrick has "no idea what non-privileged, non-redundant documents the City Attorney's Office custodians may have," and uses that assertion as an excuse to avoid discovery. This turns the entire purpose of discovery on its head and defies common sense. If Chief Kirkpatrick already had knowledge of the specific content of non-privileged, non-redundant documents in the possession of the city attorneys, she wouldn't need to serve Requests for Production to discover those documents. The actual rule, quite sensible, is that Chief Kirkpatrick is entitled to discover "any nonprivileged information which is relevant to the claims or defenses of any other party." *Hatamian v. Advanced Micro Devices, Inc*., No. 14CV00226YGRJSC, 2015 WL 7180662, at *1 (N.D. Cal. Nov. 16, 2015) (citing Rule 26(b)(1)). That information only needs to be "reasonably calculated to lead to the discovery of admissible evidence." *Id*. (citing Rule 26(b)(2)). Indeed, "the whole point of discovery is to learn what a party does not know or, without further information, cannot prove." *Stevens v. CoreLogic, Inc*., 899 F.3d 666, 678 (9th Cir. 2018).

The City's refusal to search for, collect, and produce responsive documents is not supported by law and will frustrate Plaintiff's ability to discover relevant information. Plaintiff respectfully requests that the City be ordered to search for and produce custodial files from Barbara Parker, Ryan Richardson, and Allison Dibley and provide a privilege log for any documents it withholds on the basis of privilege.

**II.     Defendant's Position**

The City has already collected documents from 45 custodians, including every Police Commissioner, the Mayor and City Administrator, Plaintiff and each of her direct reports, the Oakland City Council, the direct witnesses to events in dispute, and others.  These custodians were selected, with Plaintiff's input, to target the responsive, nonprivileged documents Plaintiff seeks.  But Plaintiff now seeks to add *at least* three more custodians, from the City Attorney's Office ("CAO"):  Barbara Parker, Ryan Richardson, and Allison Dibley (the "CAO Custodians").

Discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering ... whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "The party requesting discovery has the initial burden of establishing that its request satisfies this relevancy

The Honorable Jacqueline Scott Corley
United States Magistrate Judge
April 21, 2021
Page 4

requirement." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2018 WL 340640, at *1 (N.D. Cal. Jan. 9, 2018). "With respect to proportionality, '[t]he parties and the court have a collective responsibility to consider ... it in resolving discovery disputes.'" *Id.* (citing Fed. R. Civ. P. 26, Advisory Committee Notes to 2015 Amendments, Subdivision (b)(1)).

All responsive communications between the CAO Custodians and any of the 45 custodians will be produced or logged as privileged already. But, as separate custodians, the CAO Custodians are unlikely to have non-duplicative, non-privileged communications responsive to the discovery requests; collecting, reviewing, and logging their privileged documents will add substantial time with, at best, a limited benefit.

Nevertheless, in an attempt to avoid this dispute, the City proposed to collect and produce documents from Mr. Richardson with a negotiated limitation concerning the privilege log and sought to understand why Ms. Parker and Ms. Dibley would be appropriate custodians. Plaintiff, on the other hand, took an "all or nothing" approach. (J. Slaughter email, Mar. 30, 2021 ("Respectfully, we have served RFPs that detail the documents we are looking for. Either you are going to collect, review and produce them or not.").) The City will still accept its own proposal, which balances the competing interests and asymmetrical discovery most efficiently.

**Allison Dibley.** Ms. Dibley is not relevant to any claims or defenses in this lawsuit. Plaintiff's Complaint does not mention Allison Dibley whatsoever, neither party has disclosed her in their respective G.O. 71 disclosures, and Plaintiff's RFPs do not mention Ms. Dibley.

Ms. Dibley is an unnecessary custodian. Plaintiff points to Ms. Dibley's representation of the Police Commission, which is privileged and ended *over two years* before Plaintiff's termination. Plaintiff's Complaint does not include any reference to protected activity concerning Ms. Dibley. Plaintiff also points to an extraneous comment from Ms. Dibley in a report accusing Police Commissioner Ginale Harris of "lying" about what Ms. Dibley said. Plaintiff fails to note that Ms. Dibley's comment refers to a December 27, 2017 Commissioner meeting at which they discussed whether alternate Police Commissioners would sit on the dais during meetings. Plaintiff's Complaint contains no allegations concerning that meeting or seating on the dais.[2]

**Barbara Parker.** Plaintiff fails to establish why Ms. Parker should be added as a custodian. Plaintiff suggests that she was a "recipient" of Plaintiff's complaints, and disclosed her in her G.O. 71 Disclosures.

This bare showing is not enough. Plaintiff disclosed Ms. Parker as a witness with knowledge of the decision to hire Plaintiff, Plaintiff's reports of misconduct, and the decision to

---

[2] Other examples of CAO Custodians' "involvement" are unrelated to Plaintiff's claims. The Complaint makes no allegations concerning Brown Act compliance, and none of the three CAO custodians at issue here was named in Plaintiff's report on the Pawlik shooting.

The Honorable Jacqueline Scott Corley
United States Magistrate Judge
April 21, 2021
Page 5

terminate Plaintiff." (Pl.'s G.O. 71 Disclosures at § II.) But the "decision to hire" Plaintiff is not relevant to any claim or defense here, the "reports of misconduct" have been produced already, and any information Ms. Parker may have concerning the decision to terminate Plaintiff is only relevant insofar as it was sent to or received from the decision-makers, and thus has already been captured in the City's search.

**Ryan Richardson.** The City has agreed to collect, review, and produce Mr. Richardson's documents so long as it is not required to log all privileged, internal CAO communications. This proposal reflects that thousands of logged, privileged communications are of no value, but require disproportionate time and expense.[3]

Similarly, logging voluminous, privileged internal communications of the CAO, who were not decision-makers in Plaintiff's termination, does nothing to advance any issue in this case, and wastes resources. Plaintiff's Complaint references approximately three years of the most controversial legal issues the City faced, including, but not limited to, spinoff investigations, civil lawsuits, ongoing disciplinary considerations, and the City's reporting of its required reforms in ongoing oversight. The City expects that the bulk of non-duplicative, responsive documents located in CAO attorney files will be privileged or work product as communications among attorneys formulating advice or strategy for the City. The City estimates that, if forced to log all internal CAO communications, Mr. Richardson's log alone would number in the thousands.

---

[3] Plaintiff suggests that the privilege log is critical here because the City has "already attempted to claim privilege over plainly non-privileged communications – including Plaintiff's whistleblower complaints themselves." This is false. The City produced all of Plaintiff's complaints. Furthermore, Plaintiff did not raise a dispute over privilege designations in the meet-and-confer process.

1675971