August 5, 2021

**VIA ECF**

Hon. Jacqueline S. Corley
United States Magistrate Judge
Northern District of California
San Francisco Courthouse
Courtroom E - 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

Re:     *Kirkpatrick v. City of Oakland | Discovery Dispute*
        Case No. 3:20-cv-05843-JSC

Dear Judge Corley:

      Pursuant to the Court's Civil Standing Order, the parties in *Kirkpatrick v. City of Oakland* submit the following joint discovery letter regarding Chief Kirkpatrick's Amended Notice of Deposition to the City of Oakland (the "City"), pursuant to Federal Rule of Civil Procedure 30(b)(6) (the "Notice"). A copy of the Notice is attached as **Exhibit A**. Although counsel for both parties have diligently met and conferred regarding the scope of the Topics in the Notice, the parties are at an impasse with respect to certain Topics and seek the Court's resolution of their dispute.

      **Chief Kirkpatrick's Position**. Chief Kirkpatrick requests that the Court direct the City to designate a witness to testify as to Topics 5, 6, 10, 11, 12, 14, 17, and 19, which are all topics for which the City has refused to produce a witness. Moreover, the City also has indicated that it will only prepare a witness for those portions of Topic 8 that the City—in its sole discretion— believes are relevant. But the City has not provided any authority supporting its unilateral decision regarding the relevancy of the Topic and thus should be ordered to comply with its discovery obligations and prepare its witnesses to testify as to the Topics as listed.

      Chief Kirkpatrick may move to compel a response to the Notice where the City "fails to make a designation under Rule 30(b)(6)." Fed. R. Civ. P. 37(a)(3)(B)(ii). While the party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1), the party opposing discovery bears the "heavy" burden of showing why the discovery should be denied. *Ludlow v. Flowers Foods, Inc.*, 2019 WL 10058829, at *2 (S.D. Cal. Sept. 24, 2019). Pursuant to Rule 26, "[t]he Court has broad discretion to permit discovery of potentially relevant evidence." *Mitsui O.S.K. Lines, Ltd. v. SeaMaster Logistics, Inc.*, 2012 WL 6096676, at *1 (N.D. Cal. Dec. 7, 2012) (internal quotation marks, citations, and alterations omitted).

      The City refuses to produce witnesses for several Topics that go directly to the heart of this case. It will not provide a witness to testify regarding the City's compliance with the

Hon. Jacqueline S. Corley                                                      **VIA ECF**
August 5, 2021
Page 2

Negotiated Settlement Agreement in *Allen*, which the City has clearly indicated will form the
basis of one if its leading defenses (Topic 14). Likewise, it will not provide testimony regarding
the City's understanding of the Police Commission's role, which is central to the complaints that
Chief Kirkpatrick raised and ultimately led to retaliation (Topics 5 and 6). The City also declines
to produce a witness to discuss investigations related to the Pawlik shooting (Topic 10), or the
City's *own* investigations of the Police Commission (Topic 8).

        The City provides two justifications for this position. ***First***, the City contends that it need
not produce a witness "merely to assert privilege" and declines to designate a witness for Topics
5, 6, and 14 on that basis.[1] But numerous courts in this District have required parties to designate
witnesses for topics "involving legal concepts," where the topic asks only for the *witness's*
understanding. *See, e.g.*, *Landmark Screens, LLC v. Morgan, Lewis & Brokius LLP*, 2010 WL
3221859, at *3 (N.D. Cal. Aug. 13, 2010; *CellNet Data Sys., Inc. v. Itron, Inc.*, 178 F.R.D. 529,
533 (N.D. Cal. 1998) ("it is well-established that witnesses may offer testimony about ultimate
issues, even when those ultimate issues involve legal concepts."). Contrary to the City's
contention, Topics 5, 6, and 14 do not *per se* require a witness to provide "legal conclusions";
they simply seek the *City's* understanding of various facts that are crucial to the allegations in
Chief Kirkpatrick's complaint. The City posits that "any question posed under these Topics
would call for privileged information," but the City's unilateral judgment on this issue is entirely
premature. Its obligation under the Rules is to designate a witness and then to object to any
question that, in its view, calls for privilege. Only then will the Court have a record upon which
to rest a ruling. Tellingly, the City is unable to provide a single legal citation for the proposition
that it need not designate a witness solely because it "expects" that testimony will cover
privileged matters.

        Moreover, there are numerous questions Chief Kirkpatrick could ask on these topics that
would not call for the content of privileged communications. Solely by way of example, for
Topic 5, Chief Kirkpatrick is entitled to information regarding what the City understands the
Police Commission was created to do, the scope of the Police Commission's role and
responsibilities, and the type of oversight the City expected from the Police Commission—all
issues that go to the heart of Chief Kirkpatrick's complaints about the Police Commission
deviating from and exceeding its mandate. The City attempts to characterize this testimony as
pertaining to exclusively legal advice about the City *charter*, but that is not what the plain
language of the Topic seeks—indeed, the word "charter" appears nowhere in Topic 5. If the City
believes Topic 5 implicates aspects of legal advice related to its Charter—it has not explained
how—it should designate a witness and assert privilege over any aswers that would reveal the
content of privileged communications. Topics 6 and 14 have nothing to do with the City
charter—they are about the Police Commissions' access to certain records as well as progress

---

[1] Topic 5 seeks the City's understanding of the scope of the Police Commission's mandate under
Measure LL and its amendments. Topic 6 seeks the City's understanding of the Commission's
ability to access police officer records. Topic 14 seeks the City's assessment of its progress
towards compliance with the Negotiated Settlement Agreement in *Allen v. City of Oakland*.

Hon. Jacqueline S. Corley                                                          **VIA ECF**
August 5, 2021
Page 3

toward certain goals during the Chief's tenure.[2] The City next contends that Topics 8(i) and (iii) as well as 11, 12, 17, and 19 are irrelevant, but Chief Kirkpatrick's complaint alleges that she reported Police Commissioner behavior that she reasonably believed was unlawful and that raised issues of substantial public concern. The information covered by those Topics, which deal with potential Commissioner misconduct, is plainly relevant, particularly given the early stage of discovery in this case.[3] Nor do those topics seek legal analysis. Instead, they seek any nonprivileged information in the City's possession related to complaints that Chief Kirkpatrick lodged prior to her wrongful discharge.

        *Second*, the City claims that Topic 10 is overbroad and irrelevant. Topic 10 seeks testimony regarding investigations related to the officer-involved shooting of Joshua Pawlik and the City's response to those investigations. The City has not been shy about its intention to invoke Chief Kirkpatrick's handling of the investigation into the Pawlik shooting and the resulting officer displicine as a specific example of poor performance. The Skelly hearing officer's report and the Stage Three Grievance decision analyze Chief Kirkpatrick's discipline decision and provide their assessment of the appropriate discipline. Topic 10 thus directly targets one of the City's defense theories and identifies with specificity the issues Chief Kirkpatrick seeks to explore related to that defense. While the City objects that some of the reports occurred after Chief Kirkpatrick's termination, their conclusions compared with Chief Kirkpatrick's disposition of the case are directly relevant. The City has provided no basis for refusing to allow Chief Kirkpatrick to probe the scope and basis for its purported defense.

        Chief Kirkpatrick requests that the Court order the City to designate a witness for each Topic in the Notice.

        **<u>The City's Position</u>**.

        Plaintiff's disputed topics are not proper matters for examination under Rule 30(b)(6). Several topics seek testimony on the City's privileged legal analysis, while others have no apparent relevance to the claims or defenses at issue.

        To be sure, this Rule 30(b)(6) notice is the twelfth deposition that Plaintiff has sought in this litigation.  The eleven other notices went to current or former City officials in their personal capacities.  At least some of these individual deponents will likely also be designated to give

---

[2] The City protests that Chief Kirkpatrick has failed to provide an exhaustive list of exemplar questions she may ask on these Topics. Given that this is a *five-page* joint letter brief, Chief Kirkpatrick has provided examples demonstrating that the City's position is meritless, but she need not and indeed cannot cover all questions she would anticipate asking at deposition.

[3] Topics 8(i) and (iii) concern the "decision to initiate the investigation and to hire" Public Interest Investigations and Nossaman LLP. Topics 11, 12, 17, and 19 concern the City's assessment of whether certain interactions between the Police Commissioners and others at public meetings were appropriate and within the bounds of authority.

Hon. Jacqueline S. Corley                                                                    **VIA ECF**
August 5, 2021
Page 4

testimony in response to the Rule 30(b)(6) topics.  And as the Rule 30(b)(6) notice covers nearly
every issue in this litigation, it is likely that Plaintiff will cover these same topics with individual
deponents as well as Rule 30(b)(6) designees.  The City's objections to the topics are not
designed to forestall relevant discovery, as Plaintiff has ample opportunity to question witnesses
on relevant, non-privileged issues.  Instead, the City's objections focus on the fact that the
City—as opposed to individuals—is asked to provide testimony on privileged or irrelevant
topics.

      ***Topics 5, 6, 8(i) and (iii), 14***.  Topics 5, 6, 8(i) and (iii), and 14 seek Rule 30(b)(6)
testimony concerning the City's "understanding" or "assessment" of "Measure LL and all
amendments," the "ability" of the Police Commission to access certain records, the reasons its
in-house attorneys initiated internal investigations, and its compliance with the NSA during
Plaintiff's time as Chief.  Only a small fraction of the information sought in these broad topics is
relevant to the issues in the litigation, yet Plaintiff makes no effort to narrow the topics.  More
egregiously, each topic seeks legal contentions or analysis of the interpretation of the City's
charter, or prospective or ongoing litigation.  Plaintiff cannot use a Rule 30(b)(6) deposition to
seek the City's privileged legal analysis.  *Zeleny v. Newsom*, No. 17-CV-07357-RS (TSH), 2020
WL 3057467, at *2 (N.D. Cal. June 9, 2020) ("a 30(b)(6) deposition is not an appropriate
vehicle for taking discovery into legal contentions"); *3M Co. v. Kanbar*, 2007 WL 1794936, at
*2 (N.D. Cal. June 19, 2007) (topics "seeking legal conclusions ... should not form the basis for
30(b)(6) deposition topics"); *see also Landmark Screens, LLC v. Morgan, Lewis & Brokius LLP*,
No. C08-02581 JF(HRL), 2010 WL 3221859, at *3 (N.D. Cal. Aug. 13, 2010) (cited by
Plaintiff) (permitting designation of a witness where the topics "do not necessarily seek 'legal
conclusions'" but cautioning "not to stray too far into the area of legal conclusions in its
questioning").  The City's assessment of its laws, and its analysis concerning potential or
ongoing litigation, are plainly privileged.

      The City has asked for Plaintiff's counsel to explain what non-privileged, relevant issues
might be discussed in connection with Topics 5, 6, 8(i) and (iii), and 14.  The only detailed
explanation Plaintiff offers is that, as to Topic 5, the role and scope of the Police Commission's
authority is generally at issue.[4]  The Police Commission was created through an amendment to
the City Charter, known as Measure LL, and the City's testimony of its analysis of the scope and
meaning of that Charter amendment—the source of Police Commission authority—would reveal
its attorneys' work product and advice.  Similarly, Topic 6—the Police Commission authority to
access certain records—calls for a legal analysis of the reach of Measure LL.  The other topics
likewise call for attorney work product or advice, including progress under a negotiated
settlement agreement (which remains under Court supervision), or the rationale behind whether
and when to undertake an internal investigation.  Plaintiff offers no specific questions or topics
that could be asked of Topics 6, 8(i) and (iii), or 14.  Plaintiff's ongoing inability to identify
relevant, non-privileged information is reason to reject these topics.  *See Apple Inc. v. Samsung*

---

[4] The City does not agree that this is an issue in dispute, because Plaintiff does not dispute that
the Police Commission had the authority to terminate Plaintiff's employment.

Hon. Jacqueline S. Corley                                                **VIA ECF**
August 5, 2021
Page 5

*Elecs. Co.*, No. C 11-1846 LHK PSG, 2012 WL 1511901, at *2 (N.D. Cal. Jan. 27, 2012) ("At oral argument, Samsung's counsel struggled to articulate to the court how Apple could be expected to prepare a witness on such topics . . ."). Where, as here, the entire topic is improper, the City should have no obligation to seat a witness. Legal contentions, if relevant, should be explored through other forms of discovery.

      ***Topics 11, 12, 17, and 19.*** Topics 11, 12, 17, and 19 seek the City's assessments concerning various interactions between Police Commissioners and others, some of which occurred at public meetings. Many of the individuals involved are already slated to be deposed in their individual capacities. The City's "assessments" of the conduct of third parties, if they exist, are irrelevant to any claims or defenses in this matter, and Plaintiff does not articulate how it could be otherwise.

      More critically, the topics improperly seek the City's legal analysis concerning whether those individuals acted "appropriately" or "within the bounds of their authority," or whether the actions amounted to harassment or triggered reporting obligations. These phrases cover nothing more than internal legal analysis. As with the other topics, the City's legal conclusions are not the proper subject of a 30(b)(6) deposition. Especially here, where the topics are of such marginal relevance and reach almost exclusively into privileged analysis, the City should not be obligated to provide a 30(b)(6) witness.

      ***Topic 10.*** Topic 10 seeks information concerning nearly every stage of the investigations into the officer-involved shooting of Joshua Pawlik. Plaintiff correctly notes that her handling of that investigation will be one of the City's legitimate, non-retaliatory explanations for her termination, and the City does not object to providing a 30(b)(6) witness to discuss the City's various investigations into the shooting and its aftermath.

      But Topic 10 seeks more than the City's analysis of the shooting. It also seeks to depose a witness on the grievance process initiated by officers disciplined as a result of the shooting. The grievance process follows the steps in the officers' collective bargaining agreement, and the analysis turns *not* on whether the City handled the shooting and its aftermath appropriately, but on whether the officers can be disciplined. The process also occurred after Plaintiff was terminated and therefore could not have informed any decisionmaker about whether Plaintiff handled the shooting appropriately. The information does not make it any more or less likely that Plaintiff's termination was retaliatory. *See Arteaga v. Brink's, Inc.*163 Cal.App.4th 327, 343 (2008) (plaintiff "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.") For similar reasons, changes to policies, practices, and procedures occurring after Plaintiff's termination have no bearing on any claims or defenses asserted in this matter.

      The topics above are improper, and the City should not be required to designate a witness to offer testimony on them.

Hon. Jacqueline S. Corley                                         **VIA ECF**
August 5, 2021
Page 6


Very truly yours,

KEKER, VAN NEST & PETERS LLP

*/s/ R. James Slaughter*

R. James Slaughter


COBLENTZ PATCH DUFFY & BASS LLP

*/s/ Katharine Van Dusen*

Katharine Van Dusen

# Exhibit

# A

KEKER, VAN NEST & PETERS LLP
JOHN W. KEKER - # 49092
jkeker@keker.com
R. JAMES SLAUGHTER - # 192813
rslaughter@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
NICHOLAS GREEN - # 323959
ngreen@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Plaintiff ANNE KIRKPATRICK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANNE KIRKPATRICK,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF OAKLAND, CALIFORNIA,<br>a public corporation,<br><br>Defendant. | Case No. 3:20-cv-05843-JSC<br><br>**PLAINTIFF ANNE KIRKPATRICK'S AMENDED NOTICE OF RULE 30(B)(6) DEPOSITION TO DEFENDANT THE CITY OF OAKLAND, CALIFORNIA**<br><br>Judge:    Hon. Jacqueline S. Corley<br><br>Date Filed: August 19, 2020<br><br>Trial Date: May 16, 2022 |

PLAINTIFF ANNE KIRKPATRICK'S AMENDED NOTICE OF RULE 30(B)(6) DEPOSITION TO DEFENDANT
THE CITY OF OAKLAND, CALIFORNIA
Case No. 3:20-cv-05843-JSC

1717310

1  **TO DEFENDANT THE CITY OF OAKLAND, CALIFORNIA, AND ITS COUNSEL OF**
2  **RECORD:**

3     **PLEASE TAKE NOTICE** that pursuant to Rules 26 and 30(b)(6) of the Federal Rules of
4  Civil Procedure and Civil Local Rule 30, Plaintiff Anne Kirkpatrick, by and through her attorneys
5  of record in this action, will take the testimony upon oral deposition of Defendant the City of
6  Oakland, California (the "City") through one or more of the City's officers, directors, managing
7  agents, or other persons designated and consenting to testify on the matters listed in Attachment
8  A.  The person(s) designated by the City shall be prepared to testify as to such matters known or
9  reasonably available to the City.

10     The deposition shall commence on August 30, 2021 at 9:00 a.m. at the offices of Keker,
11  Van Nest & Peters, LLP, 633 Battery Street, San Francisco, CA 94111, or at some other time and
12  place mutually agreed upon, before a court reporter or other officer authorized to administer
13  oaths.  The deposition will continue from day to day until completed, in accordance with the
14  Federal Rules of Civil Procedure, and will be recorded by stenographic and videographic means,
15  including the use of real-time interactive transcription such as LiveNote.  Plaintiff requests that
16  Defendant produce a list of proposed witnesses designated to testify for each topic in Attachment
17  A at least two weeks before the deposition.

18     Plaintiff reserves the right to notice and depose Defendant pursuant to Rules 26 and
19  30(b)(6) of the Federal Rules of Civil Procedure at a later date on other subject matters.

20  Dated:  July 20, 2021                    KEKER, VAN NEST & PETERS LLP

22                              By:   /s/ *Julia L. Allen*
                                    JOHN W. KEKER
23                                    R. JAMES SLAUGHTER
                                    RYAN K. WONG
24                                    JULIA L. ALLEN
                                    NICHOLAS GREEN
25
                                    Attorneys for Plaintiff ANNE
26                                    KIRKPATRICK

1717310

**ATTACHMENT A**

For purposes of this Deposition Notice, these defined terms shall have the following meanings:

**DEFINITIONS**

1.      "YOU" and "YOUR" and "THE CITY" shall mean the City of Oakland, California.  For the avoidance of doubt, the scope of information requested in each Topic below includes all information "known or reasonably available" to the CITY.  Fed. R. Civ. P. 30(b)(6).

2.      The term "CITY OFFICIALS" shall refer to the Mayor of the City of Oakland, the City Administrator of the City of Oakland, the Oakland City Council, the Police Commission and all past and present Police Commissioners, the City Clerk and Clerk's Office employees, the City Attorney and City Attorney Office employees, the City Auditor and Auditor Office employees, the City's Human Resources Department, and the Oakland Police Department and all of its employees.

3.      The term "NEGOTIATED SETTLEMENT AGREEMENT" shall refer to the settlement agreement entered into by THE CITY and the Plaintiffs in *Delphine Allen v. City of Oakland*, Case No. 3:00-cv-04599-WHO, in the United States District Court for the Northern District of California, originally commenced in December 2000.

4.      The term "COMPLAINT" shall refer to the Complaint filed in *Anne Kirkpatrick v. The City of Oakland, California*, No. 3:20-cv-05843-JSC, currently pending in the United States District Court for the Northern District of California.

5.      The term "PLAINTIFF" shall refer to Chief Anne Kirkpatrick.

6.      The term "POLICE COMMISSION" shall refer to the City of Oakland's Police Commission.  The term "POLICE COMMISSIONERS" shall refer to ALL past AND present members of the POLICE COMMISSION.

7.      The term "PAWLIK SHOOTING" shall refer to the officer-involved shooting of Joshua Pawlik on March 11, 2018 in Oakland, California.

8.      The term "PAWLIK INVESTIGATIONS" shall refer to ALL investigations into the PAWLIK SHOOTING, including those undertaken by YOU, the Community Police Review Agency/Community Police Review Board, or any other investigating entity.

9.       The term "PII REPORT" shall refer to the report Public Interest Investigations prepared regarding POLICE COMMISSIONER Ginale Harris and released on March 2, 2020.

10.     The term "CITY AUDITOR REPORT" shall refer to the investigative report about the POLICE COMMISSION released by the Oakland City Auditor on June 1, 2020 and entitled "Performance Audit of the Oakland Police Commission."

11.     The term "SKELLY RECOMMENDATION" shall refer to the April 2020 report of Michael Gennaco regarding the discipline imposed on Oakland Police Department personnel related to the PAWLIK SHOOTING.

12.     The term "STEP 3 GRIEVANCE RESPONSE" shall refer to the March 1, 2021 report of Jeff Sloan regarding the discipline imposed on Oakland Police Department personnel related to the PAWLIK SHOOTING.

13.     "COMMUNICATION" includes any form of transmitting, receiving or exchanging information or ideas from one person to another, including without limitation correspondence, letters, personal and professional electronic mail, face-to-face communications, telephone calls, text or SMS messages, postings, or messages (including status updates, wall comments, or groups joined) through social media services (including but not limited to LinkedIn, Twitter, Facebook, and Instagram) or other instant messaging services (including but not limited to iMessage, WhatsApp, Slack, Skype, and Microsoft Teams), voicemails, faxes, telegrams,

1717310

memoranda, reports, discussions, conversations, negotiations, agreements, notes or other forms of information or ideas exchanged, whether oral, electronic or written.

14.     "PERSON" refers to natural persons and entities including but not limited to corporations, partnerships, firms, proprietorships, joint ventures, unions, associations, groups, federations, governmental agencies, or any other organization or entity and his, her, its, or their officers, agents, and employees, and all predecessors in interest, successors, affiliates, subsidiaries, and related entities.

15.     The terms "REFLECTING," "REFERRING," "RELATING," "IN CONNECTION WITH" or "CONCERNING" (and all variations on those words) shall be construed in their most inclusive sense, and shall mean reflecting, pertaining to, consisting of, mentioning, pertaining to, involving, describing, discussing, detailing, supporting, contradicting, constituting, embodying, or in any way logically or factually connecting with the matter discussed. A document "REFERRING TO" or "RELATING TO" a given subject is any document that reflects, constitutes, contains, embodies, pertains to, mentions, consists of, comprises, shows, comments on, evidences, describes, or in any other way references that subject.

16.     The term "INCLUDING" means including but not limited to.

17.     The terms "and" and "or" shall be construed in the conjunctive or disjunctive, whichever makes the request more inclusive.

18.     The use of the singular form of any term includes the plural and vice versa.

19.     The terms "each," "any," "all," and "every" are interchangeable.

20.     Any pronoun shall be construed to refer to the masculine, feminine, or neutral gender as in each case is most appropriate.

1717310

# DEPOSITION TOPICS

1.      The CITY's decision to hire PLAINTIFF as Chief of the Oakland Police Department.

2.      The CITY's evaluations of PLAINTIFF's job performance as Chief of the Oakland Police Department.

3.      The CITY's basis for its decision to terminate PLAINTIFF's employment with the CITY.

4.      The CITY OFFICIALS or other persons or entities who made the decision to terminate PLAINTIFF's employment with the CITY.

5.      The CITY's understanding, between February 2017 and February 2020, of the scope of the POLICE COMMISSION's mandate under Measure LL and all amendments, including with respect to directing day-to-day operations within the Oakland Police Department, assigning Oakland Police Department personnel to particular duties, and terminating the Chief of Police.

6.      The CITY's understanding, between February 2017 and February 2020, of the POLICE COMMISSION's ability access to peace officer personnel and disciplinary records, including the basis and mechanism for such access.

7.      The POLICE COMMISSION's demand to assign then-Deputy Chief LeRonne Armstrong as the Oakland Police Department's liaison to the POLICE COMMISSION, including the reasons for the request, whether the Oakland Police Department agreed with the request, whether Deputy Chief Armstrong was ultimately assigned as the liaison, and if so, Deputy Chief Armstrong's roles and responsibilities as liaison.

8.      All investigations, reviews, assessments, and reports the CITY conducted, commissioned, or otherwise obtained RELATED TO the POLICE COMMISSION, including at least the following three investigations:

1717310

i)      The PII INVESTIGATION, including the CITY's decision to initiate the investigation and to hire Public Interest Investigations, the report Public Interest Investigations produced, and any actions the CITY took in response to the report.

ii)      The CITY AUDITOR REPORT, including the CITY's decision to initiate the review, the report itself, and any actions the CITY took in response to the report.

iii)      The NOSSAMAN INVESTIGATION into PLAINITFF's reports, including the CITY's decision to initiate the investigation and to hire Nossaman LLP, any report Nossaman LLP produced, whether in draft or final form, and any actions the CITY took in response to the NOSSAMAN INVESTIGATION. .

9.      All reviews, assessments, or reports the CITY conducted, commissioned, or otherwise obtained RELATED TO PLAINTIFF.

10.      The PAWLIK INVESTIGATIONS, including ALL investigations and reviews conducted by the Oakland Police Department and the Community Police Review Agency/Citizens' Police Review Board, the CITY's response to the Independent Monitor's review of the Oakland Police Department's handling of the PAWLIK SHOOTING and aftermath, the SKELLY RECOMMENDATION, the STEP 3 GRIEVANCE RESPONSE related to the discipline imposed on the officers involved in the PAWLIK SHOOTING, the ultimate resolution of the officer discipline related to the PAWLIK SHOOTING, and any changes to policies, practices, and procedures resulting from the PAWLIK SHOOTING and the RELATED investigations/reports.

11.      The CITY's assessment of and response to the facts and circumstances surrounding Police Commissioners Jose Dorado and Ginale Harris's March 2018 interaction with two Oakland Police Department Neighborhood Services Coordinators, described in Paragraphs 29-35 of the COMPLAINT and PLAINTIFF'S report RELATED TO this incident, including whether Commissioners Dorado and Harris acted appropriately and within the bounds of their authority.

12.      The CITY's assessment of and response to the facts and circumstances surrounding Police Commissioner Ginale Harris's September 2018 visit to the Oakland Police

1717310

Department's Records Department and subsequent conversation with Chief Kirkpatrick described in Paragraphs 36-45 of the COMPLAINT and any related reports or investigations, including whether Commissioner Harris acted appropriately and within the bounds of her authority.

13.     The POLICE COMMISSION subpoena described in Paragraphs 63-67 of the COMPLAINT, including the documents requested, the basis for the request, the CITY's response to the subpoena, and PLAINTIFF's reports RELATED TO the subpoena.

14.     The CITY's assessment of the Oakland Police Department's progress towards compliance with the NEGOTIATED SETTLEMENT AGREEMENT during PLAINTIFF's tenure as Chief of the Oakland Police Department.

15.     The CITY's assessment of crime rates and crime rate trends in Oakland during PLAINTIFF's tenure as Chief of the Oakland Police Department, including whether PLAINTIFF's policies, practices, procedures, and leadership had a net positive, negative, or neutral effect on crime rates.

16.     The Oakland Police Department's efforts to increase diversity and inclusion through recruiting and hiring efforts during PLAINTIFF's tenure as Chief of the Oakland Police Department.

17.     The POLICE COMMISSION's request for a presentation on the Oakland Police Department's efforts to increase diversity and inclusion in its hiring practices to be presented during the October 10, 2019 POLICE COMMISSION meeting, including related scheduling issues on the part of presenting Oakland Police Department staff and the CITY's assessment of the POLICE COMMISSION's behavior during the presentation.

18.     PLAINTIFF's October 11, 2021 email to CITY OFFICIALS titled "Formal Complaint," and all COMMUNICATIONS or discussions among CITY OFFICIALS RELATED TO that email.

19.     The CITY's assessment of the POLICE COMMISSION's treatment of Alameda Public Defender Brendan Woods during the March 28, 2019 POLICE COMMISSION meeting, including whether such treatment was appropriate, amounted to harassment, and/or triggered reporting obligations.

6

1717310

20.     The CITY's investigation and analysis of the facts and circumstances of the Oakland Black Officer's Association open letter RELATED TO PLAINTIFF, Captain Jake Bassett, and diversity and race issues within Oakland Police Department, including the RELATED Administrative Instruction 71 investigation.

21.     The portions of the February 20, 2020, February 13, 2020, January 23, 2020, December 12, 2019, October 24, 2019, October 10, 2019, September 12, 2019, August 22, 2019, July 25, 2019, July 11, 2019, May 23, 2019, May 6, 2019, April 25, 2019, April 11, 2019, March 14, 2019, February 28, 2019, February 4, 2019, January 10, 2019, October 25, 2018, October 11, 2018, September 27, 2018, and August 9, 2018 POLICE COMMISSION meetings where (a) PLAINITFF's job performance and the means for evaluating her performance; (b) diversity in recruiting efforts at the Oakland Police Department; (c) compliance with the NSA; (d) the PAWLIK SHOOTING and PAWLIK INVESTIGATIONS; or (e) PLAINTIFF's termination were discussed by POLICE COMMISSIONERS.

1717310

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker, Van Nest & Peters LLP, 633 Battery Street, San Francisco, CA 94111-1809.

On July 20, 2021, I served the following document(s):

**PLAINTIFF ANNE KIRKPATRICK'S AMENDED NOTICE OF RULE 30(B)(6) DEPOSITION TO DEFENDANT THE CITY OF OAKLAND, CALIFORNIA**

☑ by regular **UNITED STATES MAIL** by placing Copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker, Van Nest & Peters LLP for collection and processing of correspondence for mailing. According to that practice, items are deposited with the United States Postal Service at San Francisco, California on that same day with postage thereon fully prepaid. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after the date of deposit for mailing stated in this affidavit.

☑ by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

Katharine Van Dusen
Kenneth P. Nabity
Donovan Bonner
Fernando Mariano
Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Tel: (415) 772-5712
Email: kvandusen@coblentzlaw.com
    knabity@coblentzlaw.com
    dlbonner@coblentzlaw.com
    fmariano@coblentzlaw.com

Executed on July 20, 2021, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Jennifer Gray

1717310