October 14, 2021

**VIA ECF**

Hon. Jacqueline S. Corley
United States Magistrate Judge
Northern District of California
San Francisco Courthouse
Courtroom E - 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

Re:   *Kirkpatrick v. City of Oakland* | Joint Discovery Letter on Privilege Instructions
        Case No. 3:20-cv-05843-JSC

Dear Judge Corley:

   Pursuant to the Court's September 29, 2021 Order re: Discovery Disputes (Dkt. No. 61), Chief Kirkpatrick served the City with an identification of ten instances where she contends the City improperly instructed a witness not to answer a question based on purported attorney-client privilege. Chief Kirkpatrick also identified an instance where the City instructed a witness not to answer a question based solely on the Brown Act. The City responded, indicating that it declined to withdraw its objections and that it preferred to proceed with a discovery letter.

   In accordance with the Court's Order, the Parties submit this joint letter regarding the outstanding dispute over the City's instructions. Chief Kirkpatrick seeks an Order from the Court (1) overruling the City's identified objections and improper instructions not to answer; (2) ordering the City to cease asserting the Brown Act as a basis for directing witnesses not to answer questions related to discussion during closed sessions of the Police Commission or City Council; (3) ordering the City to cease asserting blanket attorney-client privilege over entire Police Commission meeting discussions; and (4) reopening the depositions of Tara Anderson, Regina Jackson, and Thomas Lloyd Smith.

   The City opposes each of Chief Kirkpatrick's requests for relief, including because (1) the City's privilege instructions were proper; (2) the City may properly invoke the Brown Act to instruct witnesses not to answer questions, especially where, as in the single instance identified here, the question has no relationship to the sole federal question in the case; (3) the City has never made a "blanket" assertion of attorney-client privilege, but instead instructed witnesses with respect to specific questions; and (4) no good need exists for reopening any depositions.

   **Chief Kirkpatrick's Position**.  Pursuant to the Court's September 29, 2021 order, Chief Kirkpatrick identified ten examples across three Commissioner depositions where the City made improper objections based on the attorney-client privilege. *See* Ex. A. This is not an exhaustive list, but is provided for illustrative purposes. Chief Kirkpatrick also identified an incidence where the City improperly instructed a witness not to answer based solely on the Brown Act. These instructions relate to 2019 and 2020 Police Commission closed sessions where the ultimate decision makers discussed Chief Kirkpatrick's performance and termination. This testimony is critical: Chief Kirkpatrick's avenue for testing the credibility of each individual Commissioner's testimony regarding their reasons for terminating Chief Kirkpatrick is *asking other Commissioners what their colleagues said* during those key Commission sessions.

   Attorney-Client Privilege. The City's improper objections fall into three broad categories. ***First,*** the City asserted attorney-client privilege over the "entirety of the discussion" on broad topics. *See, e.g.*, Ex. B (Jackson Dep.) 98:9-14. This blanket assertion of privilege is improper because it sweeps in large swaths of non-privileged communications among non-attorneys and fails to identify a reasoned basis for asserting the privilege's protections as required by Fed. R. Civ. P. 26. ***Second,*** the City asserted attorney-client privilege over facts that are not cognizable as *communications* protected by the privilege at all, and over communications that were not made for the purposes of obtaining legal advice. For example, the City instructed a witness not to testify as to "the basis for the police commission's decision to terminate Chief Kirkpatrick for cause[.]" *See id.* 120:23-121:25. ***Third,*** the City asserted attorney-client privilege over Police Commissioner's own expressions of opinion on ultimate issues, which are also simply not privileged communications. *See, e.g.*, Ex. C (Smith Dep.) 227:19-228:18.[1]

   Attorney-client privilege is "limited to 'only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege[,]'" *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992) (quoting *Fisher v. United States*, 425 U.S. 391), and "[t]he party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications." *Id.* The City cannot meet its burden with respect to the ten instances identified in Exhibit A.

   Blanket assertions of privilege are improper under Fed. R. Civ. P. 26(b)(5). California federal courts are clear: "the fact that confidential communications within the privilege may have been made at [] board meetings does not cloak the entire proceeding in secrecy," and where "agendas for the pertinent board meetings . . . show that they were closed not to obtain legal advice but to consider disciplining a public employee[,] those discussions are certainly not within the attorney-client privilege." *Larson v. Harrington*, 11 F. Supp. 2d 1198, 1201 (E.D.

---

[1] Of the ten examples, Nos. 1, 8, and 10 are the first category of improper blanket instructions not to answer about the entirety of closed sessions. *See* Ex. A. Instruction Nos. 2, 3, 5, and 9 are the second category of improper instructions about facts or nonprivileged communications. *See id.* Instruction Nos. 4, 6, and 7 are in the third category of improper instructions to refrain from answering questions about Commissioner expressions of opinion on ultimate issues. *See id.*

Cal. 1998). The City's citation to *Brinckerhoff* below makes clear the sweeping extent of the privilege it seeks to claim in this case, but its reliance on that case is gravely misplaced. *Brinckerhoff* in fact quotes *Larson*, cited above, and states emphatically that "not all communications at a meeting are automatically privileged[.]" *Brinckerhoff*, 2011 WL 2926936, at *3. The *Brinckerhoff* Court ultimately *overruled* the privilege objections in that case, noting along the way that "even if a primary purpose of the Town attorney at the meeting was to dispense some advice, this does not mean that all discussions would be privileged; the actual rationale for the plaintiff's dismissal as expressed at the meeting by management (whether or not it conformed to the advice of the attorney) would not be privileged." *Id.* at 3. All of the City's blanket objections in the first category identified by Chief Kirkpatrick should be overruled.

The privilege also "does *not* protect disclosure of the underlying facts by those who communicated with the attorney." *S. California Hous. Rts. Ctr. v. Los Feliz Towers Homeowners Ass'n*, 2005 WL 3954720, at *4 (C.D. Cal. Apr. 25, 2005) (emphasis added) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981)). Thus, the objections and instructions in the second category—which assert privilege over underlying facts and the basis for certain Commission decisions—should all be overruled. The City disingenuously cherry picks portions of the transcript to suggest that these objections related to privileged communications, but the record demonstrates that is not the case. For example, the City cites Commissioner Smith's testimony that the Commissioners were seeking advice in closed session about the "application of fact to the law," Ex. E at 233:11-22, but the very next line of the transcript states: "to be clear, my question is not related to that conversation."

Finally, although Chief Kirkpatrick acknowledges that actual communications between the Commission's outside counsel and Commissioners for the purpose of obtaining legal advice are privileged (so long as third parties were not present), the City's assertion of the privilege is far too broad. Clearly, a Commissioner's expression of opinion on an ultimate issue is not "[c]onfidential information disclosed by a client to an attorney to obtain legal assistance[.]" *Phoenix Soln's Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 575 (N.D. Cal. 2008). All of the objections in the third category Chief Kirkpatrick identified should also be overruled.

Brown Act. The City has instructed a witness not to answer a question about a discussion during a Police Commission closed session based solely on the Brown Act, Cal. Gov't Code § 54963, and has signaled in the recent deposition of Mayor Schaaf that it intends to continue to object and instruct not to answer based in part on the Brown Act. But the Brown Act does not apply as an evidentiary privilege in this federal forum. *See Kaufman v. Bd. of Trs.*, 168 F.R.D. 278, 280 (C.D. Cal. 1996). Federal law governs the application of privileges in cases involving federal claims, even if the case also includes a pendent state law cause of action. *See Agster v. Maricopa Cty.*, 422 F.3d 836, 839 (9th Cir. 2005) ("Where there are federal question claims and pendent state law claims present, the federal law of privilege applies."). And even if state privilege law did apply to facts that bear only on the state law claim—a legally dubious proposition—the City's contention that the question identified in Exhibit A somehow does not bear on Chief Kirkpatrick's First Amendment claim is meritless. That claim is a *retaliation* claim based on the Chief's speech on matters of public concern. Thus, the City's decision to

terminate the Chief's employment—with or without "cause"—goes to an essential issue of the federal claim: the requisite adverse employment action.

Numerous federal courts in California have applied *Agster* and declined to apply the Brown Act as an evidentiary privilege. In *Kaufman*, a Title VII employment discrimination case, the court explained that, "[a]part from not being a privilege recognized under federal law, the Brown Act does not establish an evidentiary privilege at all; rather, it merely permits the withholding of certain information from the public generally[.]" *Id.* The court in *Coleman v. Sterling*, 2011 WL 13176814, at *3 (S.D. Cal. June 13, 2011), came to an identical conclusion and cited *Kaufman* extensively. The *Coleman* court rejected the notion that *Kaufman* is no longer good law in light of amendments to the Brown Act, observing that two additional courts in this District have embraced *Kaufman*'s rationale after the enactment of § 54963. *See id.* (citing *Surf & Sand, LLC v. City of Capitola*, 2010 WL 4393886 * 2 (N.D. Cal. Oct. 29, 2010); *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1126 (N.D. Cal. 2003)).

If the Court concludes that the objections were improper, it should reopen the Anderson, Jackson, and Smith depositions. California federal courts routinely order depositions reopened when witnesses were improperly instructed not to answer questions based on invalid privilege objections. *See, e.g.*, *Cohen v. Trump*, 2015 WL 3617124, at *4 (S.D. Cal. June 9, 2015); *Humphreys v. Regents of Univ. of Cal.*, 2006 WL 1140907, at *2 (N.D. Cal. April 3, 2006).

**The City's Position:**

Attorney-Client Privilege. "Where legal advice of any kind is sought," any "communications relating to that purpose . . . made in confidence" by the client to the attorney are privileged, absent waiver. *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). Communications between a client and its outside counsel are presumed to be made for the purpose of obtaining legal advice. *U.S. v. Chen*, 99 F.3d 1495, 1501-02 (9th Cir. 1996). In a closed session, communications are made in confidence and legal advice may be "the central focus of all discussions." *Brinckerhoff v. Town of Paradise*, No. CIV.S-10-0023, 2011 WL 2926936, at *3 (E.D. Cal. July 15, 2011) (while no evidence in the record supported an assertion of privilege, privilege plainly applies where legal advice is the "central focus" of a closed session); *Fabbrini v. City of Dunsmuir*, No. CIVS07-1099-GEB-CMK, 2008 WL 2523550, at *3, 8 (E.D. Cal. June 19, 2008) (closed session discussion was privileged where defendant established that the purpose of the meeting was to obtain legal advice).

The deposition questions at issue intrude on attorney-client privileged communications between the Commission and its counsel. For each of these closed sessions, an attorney provided advice concerning: (1) the process for terminating Plaintiff; and/or (2) whether Plaintiff's conduct amounted to "cause" under her employment contract and applicable law. Consideration of those legal issues was the focus of the discussions concerning Plaintiff's termination. *See, e.g.*, Ex. E (Smith Depo.), 224:23-225:4.

Plaintiff contends that in three instances, the City improperly asserted privilege over entire closed session discussions. No such blanket assertions appear in the record. In every instance, the City's instruction followed a particular question concerning discussions seeking legal advice. Counsel for the City instructed the witness not to reveal the content of closed session discussions "regarding the likelihood of a lawsuit resulting from Chief Kirkpatrick's termination" and a subpoena to Plaintiff. Ex. A, Nos. 10 & 8; Ex. D, 214:4-12, 112:1-10. The witness testified that the Commission was seeking legal advice. *Id.* at 113:4-11. As to a question concerning a reprimand letter (Ex. A, No. 1; Ex. B, 97:15-98:14), the discussion concerned legal advice about the content, propriety, and legal effect of the letter.

Plaintiff also contends that the City improperly asserted privilege over underlying facts. Not so. "A fact is one thing and a communication concerning that fact is an entirely different thing." *Upjohn*, 449 U.S. at 395–96. A "client cannot be compelled to answer the question, 'What did you say or write to the attorney?'" *Id*. Yet in each instance, Plaintiff sought to compel the witness to reveal what was said to counsel in the course of seeking legal advice. *See, e.g.,* Ex. E, 233:11-22 ("…you could talk about what the cause is, but the application of fact to the law or the application of the law to facts was something that people wanted to understand"). Instructions 6 & 7 implicate information the Commissioners *communicated* at the meetings about whether Plaintiff's conduct rose to the level of for-cause termination rather than their views on the subject. Ex. C, 227:20-228:2; 228:22-229:4; *see also* Ex. A, Nos. 3 & 9; Ex. B, 124:12-20; Ex. D, 114:16-115:1. Similarly, Instruction No. 4 covers closed session discussions of "concerns," which would be the subject of legal advice. Ex. B, 133:21-134:1. Plaintiff elected to seek disclosure of the substance of closed session discussions – i.e., the substance of legally protected communications – even though the City did not object to questions concerning witness' personal knowledge or views.[2] *See, e.g.*, Ex. F (Anderson Depo.), 119:17-20.

Instruction No. 5 properly instructed a witness not to reveal discussions with counsel about a draft press release. Ex. B, 240:21-242:21. Where a client sends a draft to an attorney, the request for legal review is presumed. *In re CV Therapeutics, Inc. Sec. Litig.*, No. C-03-3709 SI (EMC), 2006 WL 1699536, at *5 (N.D. Cal. June 16, 2006). The witness's characterization does not control, because she does not hold, and cannot waive, the City's privilege.

<u>Brown Act</u>. Commissioners are prohibited from revealing confidential information discussed during a closed session. Cal. Gov't Code § 54963. Under California law, the City has a privilege to "refuse to disclose" information protected under the Brown Act. Cal. Evid. Code § 1040. Commissioners therefore cannot be compelled to testify about the content of closed session discussions. *Kleitman v. Superior Court*, 74 Cal.App.4th 324, 334 (1999).

---

[2] Plaintiff was not terminated for cause. Regarding the "basis for the police commission's decision" to terminate for cause, defense counsel instructed the witness not to answer that broad question because it would require her to divulge privileged information, but asked counsel for Plaintiff to take the question "step by step" as "there may be narrower questions" that would not implicate the privilege. Ex. A, No. 2; Ex. B, 120:23-121:14.

Plaintiff argues, citing *Agster*, that federal privilege law applies because the Court has federal question jurisdiction and there are pendent state law claims.³ But Plaintiff asserts a state law claim under diversity jurisdiction. In cases in which state law supplies the rule of decision—here, for Plaintiff's Section 1102.5 claim—state privilege rules control. *See* Fed. R. Evid. 501 and Advisory Comm. Note (even in a case that includes federal question claims, for claims proceeding under diversity jurisdiction, "the committee believes it is clear that State rules of privilege should apply unless the proof is directed at a claim or defense for which Federal law supplies the rule of decision."); *Lite On It Corp. v. Toshiba Corp.,* No. CV0704758SGLAJWX, 2009 WL 10669760, at *5-6 (C.D. Cal. Mar. 4, 2009) (applying this rule where the claims don't "fall neatly into" either federal question or diversity jurisdiction).

The City asserted just one objection based solely on the Brown Act. Plaintiff asked whether "any commissioner express[ed] a view as to whether the for-cause standard was met?" Ex. A, No. II.1; Ex. C, 234:22-25. But Plaintiff was not terminated for cause, and the question does not touch on *any* of the statements that Plaintiff contends form the basis of her First Amendment claim. For those reasons, nothing ties that question, or its potential response (the question calls for a "yes" or "no"), to the sole federal question in the case.

Plaintiff wants the Court to prohibit the City from asserting the Brown Act privilege at all. But the privilege clearly applies to the state law claim. And the City has a right to preserve the privilege with respect to that claim, if for no other reason than that the First Amendment claim may not survive a pretrial dispositive motion, or a motion at the close of Plaintiff's case.

Finally, Plaintiff requests, without any supporting argument, an order allowing her to reopen three depositions. That request should be denied even if the Court disagrees with the privilege instructions. Plaintiff has four more depositions of Police Commissioners on calendar, and can ask these questions in those depositions. It would place an undue burden on already-deposed witnesses to require them to appear again. *Bookhamer v. Sunbeam Prod. Inc*., No. C 09-6027 EMC DMR, 2012 WL 5188302, at *2–3 (N.D. Cal. Oct. 19, 2012) (a court will not find "good need" to reopen a deposition under Rule 30(a)(2)(A)(ii) if the discovery sought can be obtained from a less burdensome source or the burden outweighs the benefit given the importance of the discovery in resolving the issues in the case). And if the Court does reopen the depositions, they should be limited to those questions that the Court finds were the subject of an improper instruction. *See*, *e.g.*, *Universal Trading & Inv. Co. v. Kiritchenko*, No. C-99-03073MMCEDL, 2007 WL 2300740, at *3 (N.D. Cal. Aug. 2, 2007).

---

³ Even where federal courts are not bound to apply state law, they "can create a new privilege as a matter of federal common law" if a "'public good transcending the normally predominant principle' disfavoring testimonial privileges [] justif[ies] such creation." *Agster*, 422 F.3d at 839 (citing *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996)). Before the Court issues any order prohibiting the City from relying on the Brown Act privilege, the City requests the opportunity to brief whether the state law privilege should be recognized here.

Very truly yours,

KEKER, VAN NEST & PETERS LLP

*/s/ R. James Slaughter*

R. James Slaughter


COBLENTZ PATCH DUFFY & BASS LLP

*/s/ Katharine Van Dusen*

Katharine Van Dusen