UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE KIRKPATRICK,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF OAKLAND, CALIFORNIA,<br><br>    Defendant. | Case No. 20-cv-05843-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 84 |

Anne Kirkpatrick, the former Chief of the Oakland Police Department, brings retaliatory discharge and First Amendment claims against her former employer, the City of Oakland. The City's motion for summary judgment, or in the alternative, partial summary judgment, is now pending before the Court. (Dkt. No. 84.) Having considered the parties' briefs and the relevant legal authority, and having had the benefit of robust oral argument on March 31, 2022, the Court DENIES the motion for summary judgment, with one small exception. Plaintiff has met her burden of demonstrating that a reasonable trier of fact could conclude that her whistleblowing activity was a contributing factor in her termination and that she was terminated in violation of her First Amendment rights.

**BACKGROUND**

The City of Oakland hired Anne Kirkpatrick to be the Chief of the Oakland Police Department in February 2017. Throughout her three-year tenure as the Chief, Chief Kirkpatrick had a contentious relationship with the Oakland Police Commission, a voter-created civilian oversight entity, which had the authority to supervise and terminate her as the Police Chief. On February 20, 2020, Chief Kirkpatrick was terminated by the Oakland Police Commission and Mayor Libby Schaaf without cause. Following her termination, Chief Kirkpatrick filed this civil

1  action alleging that she was terminated in violation of California Labor Code § 1102.5 for
2  reporting eight instances of Commissioner misconduct and in violation of her First Amendment
3  rights under 42 U.S.C. § 1983.

**DISCUSSION**

Defendant moves for summary judgment on Plaintiff's Section 1102.5 retaliatory discharge claim and her First Amendment claim.

A.  **Section 1102.5 Whistleblowing Protection**

California Labor Code § 1102.5(b) provides that an employer shall not retaliate against an employee for disclosing information "if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."  To prevail on a Section 1102.5(b) claim, the plaintiff must "establish, by a preponderance of the evidence, that retaliation for an employee's protected activities was a contributing factor in a contested employment action." *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 718 (2022) (citing Cal. Lab. Code § 1102.6).  "Once the plaintiff has made the required showing, the burden shifts to the employer to demonstrate, by clear and convincing evidence, that it would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in protected activity." *Id.*

Defendant argues that Plaintiff cannot meet her burden because (1) none of Plaintiff's reports constitutes protected activity; and (2) Plaintiff cannot show that any of her reports contributed to the decision to terminate her employment.

**1. Protected Activity**

"An employee engages in activity protected by the statute when the employee discloses reasonably based suspicions of illegal activity"; that is, "[i]t requires . . . that an employee disclose information and that the employee reasonably believe the information discloses unlawful activity." *Ross v. Cty. of Riverside*, 36 Cal. App. 5th 580, 592, 593 (2019).  For an employee to reasonably believe the information discloses unlawful activity, "the employee must be able to point to some legal foundation for his suspicion—some statute, rule or regulation which may have been violated

2

by the conduct he disclosed." *Id.* (cleaned up).

### a. Tow and School Incidents[1]

Drawing all reasonable inferences from the evidence in Plaintiff's favor, a reasonable trier of fact could find that Plaintiff's reports regarding the Tow Incident and the "School Incident" constitute protected activity under the statute. (Dkt. No. 86-8 ("Tow Incident" report); Dkt. No. 86-13 ("School Incident" report).)

A reasonable trier of fact could find that the information Plaintiff disclosed provided her with a reasonable basis to suspect that these incidents involved Commissioner Harris attempting to misuse her position for personal benefit in violation of Oakland Municipal Code § 2.25.060(A)(2). That Code section forbids a public servant from "us[ing] his or her position . . . or the power or authority of his or her office or position, in any manner intended to induce or coerce any person to provide any private advantage, benefit, or economic gain to the City Public Servant." The information Plaintiff disclosed could be inferred to show Commissioner Harris using her public position for private advantage. Further, the record evidence also supports a finding that Plaintiff believed the Commissioner had engaged in such unlawful activity.

Defendant's insistence that the information Plaintiff disclosed had to contain all of the elements of the law she believed had been violated is unpersuasive. *Ferrick v. Santa Clara University*, 213 Cal. App. 4th 1337 (2014), one of the cases upon which Defendant relies, held that the complaint did not contain allegations showing that the plaintiff had a reasonable basis to suspect a violation of the commercial bribery statute. *Id*. at 1345-46. The other case Defendant cites, *Patten v. Grant Joint Union High School District*, 134 Cal. App. 4th 1378, 1386 (2005), held that the plaintiff presented a triable issue of fact regarding whether her disclosure constituted protected activity when "[s]he informed a state Assembly member, his assistant, and a representative of a state Senator, that she had refused to sign the blank transfer of funds forms that [her employer] had requested because there was no way to ensure the reassigned expenditures were legitimate based on II/USP guidelines" and she "was fearful of the legality of this action."

---

[1] The Court adopts the parties' labels for these incidents. The facts of these incidents are set forth at length in the parties' briefs. (Dkt. No. 84 at 10-11, 17; Dkt. No. 93 at 9-10, 14.)

*Id.* (cleaned up). Neither case can be interpreted as holding that the disclosure itself must contain all of the elements of the law suspected to have been violated.

Defendant also contends that Plaintiff's reporting of the Tow Incident was not protected activity as a matter of law because the information she disclosed does not say that Commissioner Harris tried to seek a benefit because she was a commissioner. This argument improperly draws inferences in Defendant's favor. The evidence supports a finding that Plaintiff reported to the Mayor, City Attorney, and City Administrator that Commissioner Harris had gone to the Records Department, identified herself as a Police Commissioner, showed her badge, stated that "there was going to be a problem" with her paying the tow fees, and demanded to either see the Chief or stated that she was going to call the Chief herself. (Dkt. No. 86-8 at 6.) A reasonable trier of fact could find that this information disclosed Commissioner Harris attempting to use her public position for private advantage.

As for the School Incident, Defendant similarly argues that Plaintiff's complaint does not say that Commissioner Harris sought special treatment. This argument, again, asks the Court to draw inferences in Defendant's favor. The evidence shows that Plaintiff forwarded the complaint regarding Commissioner Harris to the City Attorney, City Administrator, City Auditor, and Oakland Public Ethics Commission for their "follow up." (Dkt. No. 86-13.) The at-issue complaint states that Commissioner Harris "flashed her badge several times attempting to gain favor from Staff members and the officers." (*Id.* at 3.) Further, assuming the facts alleged in the complaint are true, an inference can reasonably be drawn that Commissioner Harris had no legitimate reason to flash her badge to police officers responding to an incident at a San Francisco school other than to obtain a private advantage from her public position.

Defendant also suggests that protected activity only includes the disclosure of non-public information. The statute's plain language does not support this interpretation: "[a] report made by an employee of a government agency to their employer is a disclosure of information to a government or law enforcement agency." Cal. Lab. Code § 1102.5(e); *see also Hager v. Cty. of Los Angeles*, 228 Cal. App. 4th 1538, 1550 (2014), *as modified* (Aug. 19, 2014) ("[A] 'report,' by an employee of a government agency to his or her employer is a disclosure of information under

4

former section 1102.5(b). A report does not necessarily reveal something hidden or unknown."). Even if the statute supported Defendant's "non-public" interpretation, Defendant does not identify evidence in the record that establishes as a matter of law that the Mayor, City Attorney, or City Administrator were aware of this information before Plaintiff reported it. Defendant's speculation that the police report following the School Incident was publicly available is just that—speculation.

Finally, the Court rejects Defendant's insistence that Plaintiff cannot rely on the School Incident as a basis for her claims because it was not identified in the complaint. Defendant has cited no case—and the Court is not aware of any—which requires a party to identify every factual basis for their claim in their complaint. There is no dispute that the incident was identified as a basis for Plaintiff's claims prior to the close of discovery and that Defendant had the opportunity to question Plaintiff about it at her deposition. At oral argument Defendant complained that Plaintiff disclosed the incident in response to an interrogatory only two days before the close of fact discovery (but before Plaintiff's deposition was completed). Defendant's objection in opposition to summary judgment, however, was that the incident was not included in the complaint. (Dkt. No. 84 at 17 n.11.)

In sum, drawing all inferences in Plaintiff's favor, a reasonable trier of fact could find that her reports of the Tow Incident and the School Incident to the Mayor, City Attorney, City Administrator, City Auditor, and Public Ethics Commission constituted protected activity under Section 1102.5.

### b.   NCS Incident

While a closer question, there is a genuine dispute as to whether Plaintiff's report of the NCS Incident constituted protected activity. Given that Commissioner Harris raised issues with the response (or lack thereof) to her complaints about problem properties in her neighborhood and asked about internal affairs complaints she had personally submitted, as well as her statement that she had a history of having people fired, a trier of fact could draw the inference that Plaintiff reasonably suspected that Commissioner Harris was attempting to use her position to obtain personal benefit in violation of Oakland Municipal Code § 2.25.060(A)(2).

5

### c. Brendon Woods Comment

There is at least a genuine dispute as to whether the Brendon Woods Comment could reasonably be considered discrimination or harassment based on an individual's protected status—conduct prohibited by Oakland Administrative Instruction 71 (AI 71). Further, a reasonable trier of fact could find that Plaintiff reasonably believed that the Comment violated AI 71 given that Plaintiff expressed concern that she might have a mandatory reporting obligation. (Dkt. No. 86-9.) That AI 71 apparently does not apply to the Police Commission does not mean that Plaintiff could not have reasonably, albeit mistakenly, suspected the Comment violated AI 71.

Defendant's reliance on *Nejadian v. Cnty. of Los Angeles*, 40 Cal. App. 5th 703, 721 (2019), for the proposition that AI 71 is a mere internal procedure that does not qualify as a "rule" under Section 1102.5 is unpersuasive. *Nejadian* involved mere "guidelines," not a rule required to be followed. Defendant has not established that AI 71 is, as a matter of law, a mere guideline rather than a "rule." *Patten*, 134 Cal. App. 4th at 1385, does not help Defendant as there the plaintiff did not identify any federal or state law or regulation that she believed had been violated. Further, at the time of that decision, the statute only applied to the disclosure of violations of state or federal rules or regulations; reports of "local" rule violations were not covered by the statute.

### d. Subpoena Overreach and OBOA Questions

The record includes evidence from which a reasonable trier of fact could find that Plaintiff suspected that the OBOA Questions and the Subpoena violated California Penal Code § 832.7 (confidentiality of peace officer records) and Oakland Municipal Code § 2.45.080 (limiting the Police Commission's access to personnel records). While merely objecting to the Police Commission itself that it was seeking records which it did not have a right to seek would not be protected activity, a reasonable trier of fact could find that Plaintiff reported to the City Attorney that the Commission was unlawfully attempting to force Plaintiff to disclose confidential information protected by law and which the Commission had no authority to demand. Defendant's insistence that the Commission had the authority to issue the subpoena and that Plaintiff did not expressly report that the subpoena violated any laws are jury arguments; the arguments, even if accepted, do not establish as a matter of law that Plaintiff did not have

6

reasonable cause to believe that the information she disclosed to the City Attorney revealed a violation of law or noncompliance with a local rule or regulation.

### e.  Formal Complaint

Plaintiff's Formal Complaint encompasses many of the incidents discussed above; thus, a reasonable trier of fact could find the Formal Complaint constituted protected activity under the statute.

### f.  Liaison Assignment

Plaintiff's request that the City Attorney provide her counsel on the Police Commission's demand that she appoint a certain officer as the Police Commission Liaison does not constitute protected activity as a matter of law. Drawing all inferences in Plaintiff's favor, the Commission's requests that Plaintiff appoint Deputy Armstrong as liaison can be construed as a directive to appoint him. However, Plaintiff has not identified any local law or regulation that such a demand would violate. Measure LL does not prohibit the Police Commission from making a demand it does not have the authority to make; thus, the demand could not reasonably be suspected as violating Measure LL or not complying with Measure LL. With respect to the Subpoena and OBOA Questions, in contrast, Plaintiff has identified state and local laws that prohibited the disclosure of personnel records.

***

Defendant has not proved that Plaintiff did not engage in any protected activity as a matter of law. However, it has established that the Liaison Assignment "report" does not constitute protected activity under the statute as a matter of law.

### 2. Causation

To prevail at trial, Plaintiff must show that her protected disclosures were a contributing factor in her termination—not that they were "the *only* factor." *Lawson*, 12 Cal. 5th at 717 (emphasis in original). Viewing the record as a whole, and drawing all inferences in her favor, a reasonable trier of fact could so conclude.

Defendant's argument that Plaintiff must prove that her complaints were the "but for" cause of the decision to terminate her employment, and that she cannot meet that burden because

7

Plaintiff has not proved that each and every individual involved in the termination decision was aware of Plaintiff's protected activity, ignores *Lawson*. To satisfy her initial burden, Plaintiff must only show that the protected complaints were a *contributing factor* in the termination decision. At a minimum, a reasonable trier of fact could find that Commissioner Harris's decision to terminate was motivated by a retaliatory animus. That not every single decisionmaker may have been aware of every one of the complaints is not sufficient to support a finding that *no* reasonable trier of fact could find Plaintiff's reports *contributed to* the termination decision.

To be sure, the evidence in the record could also support a different narrative; but the question on summary judgment is whether drawing all inferences in Plaintiff's favor a reasonable trier of fact could conclude that Plaintiff's reports were *one* of potentially many contributing factors in her termination. *Lawson*, 12 Cal. 5th at 716 ("Even if the employer had a genuine, nonretaliatory reason for its adverse action, the plaintiff still carries the burden assigned by statute if it is shown that the employer also had at least one retaliatory reason that was a contributing factor in the action."). Summary judgment thus must be denied on Plaintiff's Section 1102.5 claim.

### B. First Amendment Retaliation

A plaintiff must show that (1) she spoke on a matter of public concern, (2) she spoke as a private citizen rather than a public employee, and (3) the relevant speech was a substantial or motivating factor in the adverse employment action. *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 (9th Cir. 2016). If the plaintiff establishes those three elements, the burden shifts to the defendant to demonstrate that (4) it had an adequate justification for treating the plaintiff differently than other members of the general public, or (5) it would have taken the adverse employment action even absent the protected speech. *Id.* at 1260 ("[F]ailure to meet any [factor] is fatal to the plaintiff's case."); *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (en banc).

Defendant's motion for summary judgment broadly argues that Plaintiff did not engage in *any* First Amendment protected activity; it does not analyze each of Plaintiff's alleged disclosures separately. (Dkt. No. 84 at 28-30.) The Court will accordingly determine whether Plaintiff has

identified evidence sufficient to support a finding of any First Amendment protected activity under the relevant standard. She has. At a minimum, there is a genuine dispute as to whether her reports regarding the School Incident and the Tow Incident are protected by the First Amendment.

### 1. Matter of Public Concern

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of the expression, with content weighing as the greatest single factor in the analysis." *Ballou v. McElvain*, --F.4th--, 2022 WL 891791, *11 (9th Cir. March 24, 2022) (cleaned up). "Public employees' expression is on a matter of public concern if it 'relat[es] to any matter of political, social, or other concern to the community.'" *Id.* (citation omitted). To qualify for protection, "[t]he speech need not be entirely about matters of public concern, but it must 'substantially involve' such matters." *Greisen v. Hanken*, 925 F.3d 1097, 1109 (9th Cir. 2019) (citation omitted). "Some subjects *both* affect a public employee's personal interests *and* implicate matters of public concern." *Ballou*, 2022 WL 891791, *11. The critical question is "whether the employee aimed to bring wrongdoing to light, not merely to further some purely private interest." *Greisen*, 925 F.3d at 1109 (cleaned up).

A reasonable trier of fact could find that Plaintiff's Tow and School Incident reports addressed a matter of public concern. She notified the City Attorney, City Administrator, Mayor, and, for the School Incident, the Public Ethics Commission of incidents that involved potential misuse of Commissioner Harris's position for personal benefit. A trier of fact could conclude that such subject is a matter of political, social or other concern to the community.

### 2. Speech as a Private Citizen or Public Employee

"[T]he determination regarding whether the plaintiff spoke as a private citizen or as a public employee [] presents a mixed question of fact and law." *Gibson v. Office of Attorney Gen., State of Cal.*, 561 F.3d 920, 925 (9th Cir. 2009). Where there is "a genuine and material dispute as to the scope and content of plaintiff's employment duties," summary judgment is improper. *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1123 (9th Cir. 2008).

Three factors guide the "fact-intensive" scope of job duties inquiry: (1) "whether or not the employee confined his communications to his chain of command is a relevant, if not necessarily

1   dispositive, factor in determining whether he spoke pursuant to his official duties"; (2) "the subject
2   matter of the communication"; and (3) "when a public employee speaks in direct contravention to
3   his supervisor's orders." *Dahlia*, 35 F.3d at 1074-75.
4         Under the first factor, Plaintiff's reports were not confined to her chain of command and
5   were consistently shared with the City Attorney and, in the case of the School Incident, the City
6   Auditor and Public Ethics Commission.  This evidence supports a finding that she was not acting
7   within the scope of her employment.  *Id.* at 1074 ("When a public employee communicates with
8   individuals or entities outside of his chain of command, it is unlikely that he is speaking pursuant
9   to his duties.").  The subject matter—using a public position for private benefit—also supports a
10  finding that the speech was made as a private citizen.  While Defendant highlights evidence that
11  could lead a trier of fact to make a contrary finding, it has not established that such finding is the
12  *only* finding a reasonable trier of fact could make.
13        Drawing all inferences in Plaintiff's favor, a reasonable trier of fact could conclude that
14  Plaintiff spoke in her capacity as a private citizen and not as the Police Chief when she notified
15  people outside of her chain of command of her concerns regarding Commissioner Harris.
16        ***
17        Accordingly, drawing all inferences in Plaintiff's favor, a reasonable trier of fact could
18  conclude that Plaintiff spoke on a matter of public concern as a private citizen.  There is also a
19  genuine dispute as to whether the protected activity was a substantial and motivating factor in the
20  termination decision.  *See Lawson*, 12 Cal. 5th at 714 (noting that "adjudication of First
21  Amendment retaliation claims under the burden-shifting framework of *Mt. Healthy City Board of*
22  *Ed. v. Doyle* (1977) 429 U.S. 274, . . . closely resembles the section 1102.6 framework").  Plaintiff
23  has thus met her burden of demonstrating a prima facie case of retaliation in violation of the First
24  Amendment.

25  **C. Defendant's Same Decision Affirmative Defense**

26        The burden thus shifts to Defendant to demonstrate "by clear and convincing evidence that
27  it would have taken the same action 'for legitimate, independent reasons.'" *Lawson*, 12 Cal. 5th at
28  707 (quoting Cal. Lab. Code § 1102.6); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,

429 U.S. 274, 287 (1977) (requiring the same showing by a preponderance of the evidence for a First Amendment retaliation claim). To prevail on this affirmative defense, Defendant would have to show that no reasonable trier of fact could conclude that Plaintiff was terminated because of the protected activity discussed above. Defendant has not met that burden.

## CONCLUSION

Defendant's motion for summary judgment is DENIED, except that partial summary judgment is granted on the limited grounds that the Liaison Assignment report did not constitute protected activity under California Labor Code § 1102.5 as a matter of law.

This Order disposes of Docket No. 84.

**IT IS SO ORDERED.**

Dated: April 6, 2022

JACQUELINE SCOTT CORLEY
United States District Judge