KEKER, VAN NEST & PETERS LLP
JOHN W. KEKER - # 49092
jkeker@keker.com
R. JAMES SLAUGHTER - # 192813
rslaughter@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
NICHOLAS GREEN - # 323959
ngreen@keker.com
MARIA F. BUXTON - # 318563
mbuxton@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Plaintiff ANNE KIRKPATRICK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANNE KIRKPATRICK, | Case No. 3:20-cv-05843-JSC |
| Plaintiff, | **PLAINTIFF'S TRIAL BRIEF** |
| v. | Judge:      Hon. Jacqueline S. Corley |
| THE CITY OF OAKLAND, CALIFORNIA, a public corporation, | Date Filed:  August 19, 2020 |
| Defendant. | Trial Date:  May 16, 2022 |

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  ADMINISTRATIVE & TRIAL MANAGEMENT ISSUES ...............................1

     A.   Length of Trial ..........................................................................................1

     B.   Time Limitations........................................................................................1

     C.   Joint Exhibit List .......................................................................................2

     D.   Issues Related to Witnesses .......................................................................3

          1.   Noncompliance with Pretrial Order .................................................3

          2.   Pretrial Depositions.........................................................................3

          3.   Brendon Woods ...............................................................................4

     E.   Exclusion of Evidence ...............................................................................5

III. CONTROLLING ISSUES OF LAW..................................................................7

     A.   Chief Kirkpatrick's reports are matters of public concern under the First
          Amendment as a matter of law. ..................................................................7

     B.   Whether AI-71 and AI-596 are "rules" within the meaning of Labor Code
          § 1102.5 is irrelevant, but they satisfy Labor Code § 1102.5 in any event............10

          1.   Chief Kirkpatrick need not prove the reasonableness of her belief
               that her reports disclosed unlawful activity by reference to a
               specific legal provision. ...............................................................10

          2.   Although legally irrelevant, AI-71 and AI-596 are rules within the
               meaning of Labor Code § 1102.5 ..................................................12

     C.   To the extent the Court concludes that any statutes are relevant, there is no
          basis to exclude AI-596 ...........................................................................13

     D.   The Police Commission and the Mayor, together, are the final
          decisionmakers under *Monell* ..................................................................14

     E.   The City has waived any affirmative defense based on *Pickering* balancing........16

     F.   The Court has already determined that the jury may consider the School
          Incident as potential protected activity. ...................................................17

i

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**Federal Cases**

*City of St. Louis v. Praprotnik,*
    485 U.S. 112 (1988).................................................................................................15

*Clairmont v. Sound Mental Health,*
    632 F.3d 1091 (9th Cir. 2011) .......................................................................9, 16

*Coszalter v. City of Salem,*
    320 F.3d 968 (9th Cir. 2003) ..........................................................................8, 9

*In re Cox,*
    41 F.3d 1294 (9th Cir. 1994) ............................................................................11

*Ellins v. City of Sierra Madre,*
    710 F.3d 1049 (9th Cir. 2013) ..........................................................................14

*Eng v. Cooley,*
    552 F.3d 1062 (9th Cir. 2009) ........................................................................7, 8

*Fitzgerald v. El Dorado Cty.,*
    94 F. Supp. 3d 1155 (E.D. Cal. 2015)...............................................................12

*Gibson v. Office of Att'y Gen., State of Cal.,*
    561 F.3d 920 (9th Cir. 2009) ..............................................................................7

*Greisen v. Hanken,*
    925 F.3d 1097 (9th Cir. 2019) ............................................................................8

*Hillhouse v. Hawaii Behavioral Health, LLC,*
    2014 WL 4093185 (D. Haw. Aug. 18, 2014) ...................................................11

*Hyland v. Wonder,*
    117 F.3d 405 (9th Cir. 1997) ............................................................................15

*Jackler v. Byrne,*
    658 F.3d 225 (2d Cir. 2011)............................................................................8, 9

*Johnson v. Multnomah Cty., Or.,*
    48 F.3d 420 (9th Cir. 1995) ................................................................................8

*Killgore v. Specpro Prof. Servs., LLC,*
    2019 WL 6911975 (N.D. Cal. Dec. 19, 2019)..................................................12

*Monell v. Dep't of Soc. Servs. of N.Y.,*
    436 U.S. 658 (1978).......................................................................................7, 14

ii

*Morrison v. Mahoney*,
    399 F.3d 1042 (9th Cir. 2005) ...................................................................................16

*Ohlson v. Brady-Morris*,
    444 F.Supp.3d 100 (D. Ariz. 2020) ..........................................................................16

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986) ...................................................................................................15

*Ricciuti v. Gyzenis*,
    832 F. Supp. 2d 147 (D. Conn. 2011) .......................................................................16

*SanDisk Corp. v. Audio MPEG, Inc.*,
    2007 WL 30598 (N.D. Cal. Jan. 3, 2007) .................................................................11

*Tam v. Qualcomm, Inc.*,
    300 F. Supp. 3d 1130 (S.D. Cal. 2018) .....................................................................12

*Thomas v. City of Beaverton*,
    379 F.3d 802 (9th Cir. 2004) ...................................................................................8, 9

*Trinidad v. Sch. City of E. Chicago*,
    2021 WL 534802 (N.D. Ind. Feb. 12, 2021) .............................................................16

*Unicolors, Inc. v. H &M Hennes & Mauritz, L.P.*,
    2017 WL 11489792 (C.D. Cal. Nov. 15, 2017) .........................................................13

**State Cases**

*Green v. Ralee Eng'g Co.*,
    19 Cal. 4th 66 (1998) .................................................................................................11

*Nejadian v. County of Los Angeles*,
    40 Cal. App. 5th 703 (2019) ......................................................................................11

*Patten v. Grant Joint Un. High Sch. Dist.*,
    134 Cal. App. 4th 1378 (2005) ..................................................................................12

*Ross v. Cty. of Riverside*,
    36 Cal. App. 5th 580 (2019) ...............................................................................10, 12

**State Statutes**

Cal. Labor Code § 1102.5 ..................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 8 ...........................................................................................................16

Fed. R. Civ. P. 15 .........................................................................................................14

Fed. R. Evid. 401 ............................................................................................................5

Fed. R. Evid. 402 ............................................................................................................5

Fed. R. Evid. 403 ............................................................................................................5

Local Rule 7-9...........................................................................................................11, 17

**Other Authorities**

CACI No. 4603 .........................................................................................................11, 12

## I.   INTRODUCTION

Pursuant to the Court's Pretrial Order (Dkt. 21), Plaintiff Anne Kirkpatrick ("Chief Kirkpatrick") submits this trial brief on (1) administrative and trial management issues for the Court's consideration during the Final Pretrial Conference on April 28, 2022 and (2) controlling issues of law.

## II.   ADMINISTRATIVE & TRIAL MANAGEMENT ISSUES

The Parties have met and conferred in good faith with respect to a variety of trial management issues but disagree in several key areas.  Chief Kirkpatrick presents the following items for the Court's consideration during the April 28, 2022 Final Pretrial Conference.

### A.   Length of Trial

The Court has allocated seven court days for trial.  Dkt. 21 at 1.  In keeping with the Court's Order, Chief Kirkpatrick has prepared her case to fit within the time allotted for trial.  She understands, however, that the City intends to ask for *five additional days* of trial, through and including June 1, 2022 (a proposed schedule that would take the case through the Memorial Day long weekend, further disrupting trial and the jurors' schedules).  The City's basis for seeking this significant enlargement in unclear; to-date it has identified only the inclusion of the **School Incident** as potential protected activity to justify the additional time.

Chief Kirkpatrick objects to the request to extend the trial and believes that the Court's allotted seven days is sufficient for both sides to fairly present their cases.  This is particularly true because the total number of possible instances of protected activity remains the same (seven reports) following the Court's ruling with respect to the **Liaison Assignment** at the summary judgment stage.  The City's suggestion that scope of the matters at issue for trial has materially expanded is not supported by the record.

### B.   Time Limitations

Regardless of the total number of days for trial, Chief Kirkpatrick requests that the Court impose and enforce time limits on each party's presentation of its case, allotting equal time to each party for their respective opening statements, closing arguments, and direct, cross, and redirect examinations.  Imposing time limits will insure both that the case is tried in the seven

1

1    days allotted by the Court and that each side has an equal opportunity to present their claims and

2    defenses.

3         **C.    Joint Exhibit List**

4              The Parties have stipulated that no exhibit may be admitted into evidence except through

5    the testimony of a sponsoring witness—in other words, the mere presence of an exhibit on the

6    Joint Exhibit List is not a stipulation as to the exhibit's admissibility.

7              As Chief Kirkpatrick explains in her contemporaneously filed Objections to Exhibits, the

8    City initially submitted approximately 700 entries for the Joint Exhibit List, including more than

9    60 video recordings of entire five-hour Police Commission meetings.  Needless to say, the City

10   would have been unable to introduce anything approaching nearly seven hundred exhibits and

11   tens of hours of video.  Chief Kirkpatrick explained to the City that its over-designation of

12   potential trial exhibits was unduly burdensome and prejudicial to Chief Kirkpatrick, who could

13   not hope to review, assess, and prepare to rebut or otherwise address nearly seven hundred

14   exhibits, including hours upon hours of video.  Accordingly, Chief Kirkpatrick requested on

15   numerous occasions that the City provide a revised exhibit list including only those exhibits (or

16   portions of exhibits) which it reasonably expects to introduce at trial, beginning less than twenty-

17   four hours after receiving the City's initial draft on April 13, 2022.

18             The City initially refused, writing in email correspondence that "the length and content of

19   our list is appropriate" on April 14, 2022 and doubling down during a meet and confer on April

20   15, 2022.  Then, at 8:48 p.m. the day before the exhibit list and objections to exhibits were due to

21   be filed with the Court, the City wrote to Chief Kirkpatrick informing her, among other things,

22   that it had "decided to remove a bunch of trial exhibits" from its portion of the list, to—

23   astoundingly—alter the content of many others by removing pages, and to re-number its list.

24             In light of the City's last-minute changes, as of the submission of this Trial Brief, Chief

25   Kirkpatrick has not been able to fully review the City's changes to the exhibit list in order to

26   appropriately consider and object to the City's exhibits.  Chief Kirkpatrick was required to begin

27   an entire re-review of the City's exhibits for potential objections the night before all pretrial

28   filings were due (a review that is ongoing), to be certain she was objecting only to exhibits that

1851143

1   remain on the City's list and that all objections remain valid for those documents the City has

2   altered.  Chief Kirkpatrick therefore requests that the Court provide an additional week, through

3   May 5, 2022, for her to file and serve amended objections to the City's proffered exhibits.

4       **D.**    **Issues Related to Witnesses**

5               **1.**    **Noncompliance with Pretrial Order**

6       The Court's Pretrial Order (Dkt. 21) requires the parties to provide "a short statement of

7   the substance of his/her testimony and, separately, what, if any, non-cumulative testimony the

8   witness will offer" for each witness a party intends to call in its case in chief.  The City, however,

9   fails to identify noncumulative testimony separately and—more problematically—includes the

10  following broad disclaimer: "the City reserves the right to ask witnesses about any matter raised

11  in their depositions, during direct examination during Plaintiff's case-in-chief, or as set forth in

12  their declarations submitted in this matter."  This exception swallows the rule, and is just as good

13  as saying nothing at all.  Chief Kirkpatrick requests that the Court preclude the City from offering

14  witness testimony on subjects it has not specifically identified in the descriptions in its witness

15  list, and provide the noncumulative testimony that it expects each witness to cover, to the extent

16  there is any.

17              **2.**    **Pretrial Depositions**

18      To avoid unfair prejudice, Chief Kirkpatrick requests that she be allowed two-hour

19  depositions of two out of the six witnesses on the City's witness list who have never been

20  deposed: Ian Appleyard and Kellie Johnson.[1]

21      As the Court is aware, the City sought to limit the total number of depositions Chief

22  Kirkpatrick would be authorized to take through discovery in this litigation, explaining that no

23  more than fifteen depositions were "necessary."  *See* Dkt. 58.  The Court ultimately granted each

24  party the right to take twenty depositions by Order dated September 29, 2021 (Dkt. 61).  The City

25  vigorously sought to enforce this limitation through motions practice.  *See* Dkt. 79.

26      Now, however, the City files a trial witness list that includes twenty-one names.  As a

27

28

---

[1] The following witnesses are on the City's witness list and have not been deposed by either party: Ian Appleyard, Kellie Johnson, Keith Rohman, Sam Singer, Johnna Watson, and Brendon Woods.

1851143

result, there is at least one witness that Chief Kirkpatrick could not possibly have deposed even if she had somehow predicted the entirety of the City's trial witness list—an impossible feat given that the City identified forty-six individuals in its Amended General Order 71 disclosures.  Even still, two of the City's trial witnesses (Sam Singer and Brendon Woods) are not included in the City's Amended GO 71 disclosures.

The City's witness list thus prejudices Chief Kirkpatrick's ability to prepare for trial and prosecute her claims because it includes *six* witnesses whom *nobody* has deposed in this action.[2] Half of these witnesses are *City employees* (Ian Appleyard, Kellie Johnson, Johanna Watson) whom Chief Kirkpatrick may not contact or interview prior to their testimony.  The City apparently intends to offer them on substantive issues, like the "job requirements for Chief of Police" and "HR policies and procedures, including as set forth in Administrative Instructions" (Appleyard), as well as an "investigation and conclusions regarding Plaintiff's reports of misconduct" (Johnson).

To mitigate the prejudice associated with these witnesses, Chief Kirkpatrick requests an Order authorizing a two-hour pretrial deposition of the following witnesses:

1.      Ian Appleyard, the City's Human Resources Director; and

2.      Kellie Johnson, the Chief of Enforcement for the Oakland Public Ethics Commission

### 3.      Brendon Woods

The City listed Brendon Woods, the Alameda County Public Defender, on its trial witness list.  However, the City did not provide any description of the substance of Mr. Woods's potential testimony until after the deadline to serve opening briefs for motions *in limine*, nor did the City include Mr. Woods on its Amended GO 71 disclosures.  As it turns out, the City intends to present Mr. Woods on entirely irrelevant subjects: "His March 2019 presentation to the Police Commission; his interactions with the Police Commission; his interactions with Plaintiff; his interactions with Commissioner Harris."

---

[2] The City chose to conduct just two depositions during discovery (Chief Kirkpatrick and Virginia Gleason); it cannot now be heard to complain about an inability to prepare for witnesses on Chief Kirkpatrick's witness list.

Mr. Woods's testimony on his presentation is not relevant because the content of his presentation is not at issue; only Commissioner Harris's remark and Chief Kirkpatrick's reaction to that remark are at issue.  Nor are Mr. Woods's "interactions" with the Commission or Chief Kirkpatrick relevant to any claim or defense at issue in the litigation.  If the City intends to call Mr. Woods to testify about *his* reaction to Commissioner Harris's statement (for example), or to provide broad background testimony about the Police Commission and his interactions with it, that testimony is simply not likely to make any fact of legal relevance more or less likely to be true.  *See* Fed. R. Evid. 402.  What matters is whether Chief Kirkpatrick reasonably believed Commissioner Harris's comments were unlawful, or whether the conduct of the Commission during this meeting raised issues of public concern, and whether her report to City leadership contributed to her termination.  Mr. Woods has no testimony to offer that could possibly relate to those issues.  Likewise, to the extent Mr. Woods actually had any significant interactions with Chief Kirkpatrick, the context or substance of those interactions has nothing to do with any of the claims in this case.  Mr. Woods's testimony can only be a sideshow that distracts the jury from the facts it must actually determine, consumes limited trial time, and confuses the issues.  The Court should exclude Mr. Woods's testimony under Rules 401, 402, and 403.

### E.     Exclusion of Evidence

The City has indicated during the pretrial meet and confer process that it will seek to exclude evidence related to the post-termination disciplinary proceedings for the officers involved in the Pawlik shooting and testimony from John Alden, the recently terminated former Director of the Community Police Review Agency ("CPRA").

With respect to Mr. Alden, the City's request should be denied for all the reasons explained in Chief Kirkpatrick's contemporaneously filed opposition to the City's related Motion *in Limine* (No. 1).  Mr. Alden's testimony is directly relevant 404(b) "other acts" evidence because, as a similarly situated City employee subject to the direct firing authority of the Police Commission, he submitted written reports about unlawful Commissioner conduct and was quickly terminated by the Commission.

1851143

The City also indicated that it will seek to exclude Trial Exhibits 451, 452, and 453. These are materials submitted to the Alameda Superior Court in connection with a petition for a writ of mandate directed to the City, filed by the five officers terminated in connection with the Pawlik shooting, as well as the Court's order on the writ. The City retained a neutral outside attorney to conduct the Level 3 *Skelly* hearing for these officers, who determined that all five officers should be "exonerated" for use of force outside policy and reinstated to their jobs as OPD officers. The City refused to do so.

Exhibit 451 is the Superior Court's order granting the officer's writ petition, concluding that the City violated its obligations under the Memorandum of Understanding ("MOU") with the Oakland Police Officer's Association ("OPOA") in refusing to reinstate the officers, in part by directing the Level 3 *Skelly* officer to recast his findings as "recommendations" and by directing him to leave a "DRAFT" watermark on his final reports. Exhibits 452 and 453 are attachments to the materials submitted in connection with the writ proceedings and reflect the *Skelly* Officer's findings.

It is unclear why the City thinks this evidence is irrelevant or otherwise inadmissible; the City itself has put the Pawlik shooting and OPD's response in issue. At summary judgment, the City introduced multiple declarations from the Police Commissioners which, among other things, identified Chief Kirkpatrick's purported mishandling of the Pawlik investigation as a legitimate basis for her termination. Moreover, in the City's response to Chief Kirkpatrick's Motion *in Limine* No. 1 to exclude evidence related to Monitor Warshaw, the City invokes *his* assessment of Chief Kirkpatrick's handling of the Pawlik discipline and seeks to introduce his August 2020 after-action report on the incident (which of course post-dates Chief Kirkpatrick's termination by six months). Having swung open the door to third-party testimony with respect to OPD's handling of the Pawlik shooting, the City cannot now curate the evidence to exclude those materials which do not support its narrative. Chief Kirkpatrick is entitled to rebut the City's suggestion that a wide range of stakeholders felt she mismanaged Pawlik with evidence showing that a neutral evaluator *hired by the City* agreed with her findings. The Court should decline to exclude this evidence before it is even offered.

1851143

### III.    CONTROLLING ISSUES OF LAW

The Parties disagree on several substantive legal issues that the Court must resolve prior to charging the jury.  The majority of these issues reflect the City's efforts to relitigate summary judgment and artificially narrow the case before it is presented to the finder of fact, often in direct contravention of the City's own discovery responses and the Court's summary judgment order. The Court should decline the City's invitation to revisit old topics and to litigate by surprise.

After an extensive meet and confer process, Chief Kirkpatrick understands that the following legal issues remain for Court resolution:

*(1)* whether Chief Kirkpatrick's reports address matters of public concern under the First Amendment;

*(2)* whether AI-71 and AI-596 are relevant local rules or regulations within the meaning of Labor Code § 1102.5, particularly where the City raised the issue at summary judgment and failed to move for clarification or reconsideration of the Court's resulting Order;

*(3)* whether the City may seek to exclude evidence and argument regarding AI-596, particularly where it failed to file a motion *in limine*;

*(4)* whether the Oakland Police Commissioners are "final decisionmakers" in Chief Kirkpatrick's termination for purposes of *Monell*;

*(5)* whether the City may rely on *Pickering* balancing where it has failed to plead the defense in its Amended Answer; and

*(6)* whether the City may seek to exclude protected activity which the Court has already addressed at summary judgment and upon which the City failed to file a motion *in limine*.

### A.    Chief Kirkpatrick's reports are matters of public concern under the First Amendment as a matter of law.

To succeed on her First Amendment claim, the Chief must show that her "speech addressed an issue of public concern."  *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). Because "the public concern inquiry is purely a question of law[,]" *Gibson v. Office of Att'y Gen., State of Cal.*, 561 F.3d 920, 925 (9th Cir. 2009), the Court must determine prior to charging the jury whether the Chief Kirkpatrick's reports constitute speech meriting First Amendment

protection.[3]  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  *Eng*, 552 F.3d at 1070 (internal quotation marks omitted).  Although not precisely clear at this stage, the City's arguments on summary judgment suggest that it will argue Chief Kirkpatrick's reports were mere internal grievances or personnel matters, and not matters of public concerns as a matter of law.

As the Ninth Circuit has observed repeatedly, "[t]he guarantees of the First Amendment share a common core purpose of assuring freedom of communication on matters relating to the functioning of government."  *Johnson v. Multnomah Cty., Or.*, 48 F.3d 420, 425 (9th Cir. 1995).  Thus, "speech that concerns issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government merits the highest degree of first amendment protection."  *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (internal alternation and quotation marks omitted); *see also Greisen v. Hanken*, 925 F.3d 1097, 1109 (9th Cir. 2019) ("[S]peech warrants protection when it seeks to bring to light actual or potential wrongdoing or breach of public trust.").  To receive protection, public employee "speech need not be entirely about matters of public concern, but it must substantially involve such matters."  *Griesen*, 925 F.3d at 1109.

Following these basic principles, the Ninth Circuit held in *Thomas v. City of Beaverton*, 379 F.3d 802, 809 (9th Cir. 2004), that "[u]nlawful conduct by a government employee or illegal activity within a government agency is a matter of public concern."  And in *Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011), the Second Circuit explained that "[e]xposure of official misconduct, especially within the police department, is generally of great consequence to the public."

Applying this well-settled authority, there can be little doubt from the evidence *already* in the record that Chief Kirkpatrick's speech addressed matters of public concern as a matter of law.  Most obviously, Chief Kirkpatrick's reports reflect actual wrongdoing and breaches of the public

---

[3] The City has included proposed instructions suggesting that this is a question for the jury.  As is explained in Chief Kirkpatrick's responses to those instructions, this is a question for the Court not the jury; the City's proposed instructions should not be given.

1851143

trust.  As she explained, "[w]hat was going on with the police commission was actually undermining the advancements of reform.  And I think that's a matter of public concern."  Dkt 94-11 (Kirkpatrick Depo.) at 82:19–83:5.  The Chief reported, for example, multiple instances of an unelected oversight official using her public position in an effort to receive a private benefit (the **Tow Incident** and the **School Incident**).  Likewise, the Chief reported the Commissioners' efforts to use their official positions to steer resources to their own neighborhoods and personal problems (the **NSC Incident**).  The Commission's treatment of witnesses offering testimony during Commission sessions—and their use of racially charged language that could be viewed as discriminatory or harassing (the **Brendon Woods Comments**)—is directly relevant to the public's ability to "make informed decisions about the operation of their government[.]" *Coszalter*, 320 F.3d at 973.  The same is true of the Commission's unlawful efforts to obtain confidential police officer personnel records (the **Pawlik Subpoena** and the **OBOA Questions**); this is "[e]xposure of official misconduct . . . within the police department," which is of "great consequence to the public."  *Jackler*, 658 F.3d at 236.  So too with respect to the Chief's **Formal Complaint**, which sought again to ring alarm bells within the City about a Commission completely out of control—in other words, it was "speech that helps the public evaluate the performance of public agencies," which is "a matter of public concern."  *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1103–04 (9th Cir. 2011).

More fundamentally, the Court *has already recognized* that the Chief's reports all concerned potentially unlawful conduct on the part of the Police Commissioners.  Indeed, the Court carefully considered that issue in connection with its ruling on the City's motion for summary judgment under Labor Code § 1102.5.  *See* Dkt. 103 at 2-7.  The Court concluded that a reasonable fact-finder could conclude that Chief Kirkpatrick reasonably believed she was reporting *crimes* or other unlawful acts on the part of Police Commissioners.  Unlawful conduct "is a matter of public concern."  *Thomas*, 379 F.3d at 809.

The evidence adduced at trial will only reinforce this conclusion, and the Court should instruct the jury that Chief Kirkpatrick's reports addressed matters of public concern.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.** **Whether AI-71 and AI-596 are "rules" within the meaning of Labor Code § 1102.5 is irrelevant, but they satisfy Labor Code § 1102.5 in any event.**

**1.** **Chief Kirkpatrick need not prove the reasonableness of her belief that her reports disclosed unlawful activity by reference to a specific legal provision.**

The question of whether AI-71 and AI-596 are "rules" within the meaning of Labor Code § 1102.5 is irrelevant—all that the jury must decide is whether Chief Kirkpatrick had *reasonable cause to believe* that the information in her reports disclosed a violation of a state or federal statute or local, state, or federal rule or regulation. *See* Cal. Labor Code § 1102.5(b). Nothing in the statute, or in any authority cited by the City to-date, suggests that Chief Kirkpatrick must successfully try a case-within-a-case on the lawfulness of the conduct described in each instance of protected activity. In other words, the Court is under no obligation to decide whether AI-71 and AI-596 are actually "rules" within the meaning of the Labor Code because there is no requirement that Chief Kirkpatrick prove that her reports *actually* disclosed a violation of any legal provision to prevail on her claims.

Certainly, at the summary judgment stage, one way for Chief Kirkpatrick to establish a genuine dispute of fact about the reasonableness of her belief is to point to a specific statute, rule, or regulation which *may* have been violated by the conduct described in her reports. *See, e.g.*, *Ross v. Cty. of Riverside*, 36 Cal. App. 5th 580, 592 (2019). The thrust of California decisional authority on this point could not be more clear: in each instance where a court points to the necessity for an 1102.5(b) plaintiff to identify "some legal foundation" for his or her belief, the analysis is linked closely to whether the plaintiff had "a reasonably based suspicion of illegal activity." *Ross*, 36 Cal. App. 5th at 592.

But objective reasonableness has always been judged, across a wide swath of the law, by the "totality of the circumstances," and not by rigid adherence to an analytical shorthand better

PLAINTIFF'S TRIAL BRIEF
Case No. 3:20-cv-05843-JSC

1851143

suited to summary judgment.[4]  In other words, Chief Kirkpatrick need not prove the

reasonableness of her belief that her reports disclosed violations of a statute, rule, or regulation

*exclusively* or even principally by reference to any particular statute at this stage of the case.  One

of the City's primary authorities for the contrary position in fact illuminates why reference to a

specific statute is not required.  In *Nejadian v. County of Los Angeles*, the Court of Appeal

considered the sufficiency of a jury verdict in favor of an *1102.5(c)* plaintiff.  *See* 40 Cal. App.

5th 703, 719 (2019).  Unlike 1102.5(b), the provision which provides the basis for Chief

Kirkpatrick's claims, 1102.5(c) "requires a showing that the activity in question *actually* would

result in a violation or noncompliance with a statute, rule, or regulation."  *Id.* (emphasis in

original).  As the *Nejadian* court observed, "[t]hat is a quintessentially legal question."  *Id.*  Not

so here, where *a jury* must determine, based on all the circumstances, whether Chief Kirkpatrick

*reasonably believed* her reports disclosed unlawful conduct.  As reflected in the relevant CACI

instruction, the jury should be free to consider whatever it thinks most appropriate in reaching the

answer to that question.  *See* CACI No. 4603.[5]

     Put another way, because Chief Kirkpatrick's reasonable belief about the unlawfulness of

the conduct disclosed in her reports need *not* have been correct, *see, e.g.*, *Green v. Ralee Eng'g

Co.*, 19 Cal. 4th 66, 87 (1998), it would be misleading, confusing, and legally erroneous to

---

[4] *See, e.g.*, *In re Cox*, 41 F.3d 1294, 1298-99 (9th Cir. 1994) (applying totality of circumstances test to objective reasonableness of petitioner's failure to keep books and records in bankruptcy proceedings); *Hillhouse v. Hawaii Behavioral Health, LLC*, 2014 WL 4093185, at *3 (D. Haw. Aug. 18, 2014) (applying totality of circumstances test to objective reasonableness of client's belief regarding existence of attorney-client relationship); *SanDisk Corp. v. Audio MPEG, Inc.*, 2007 WL 30598, at *6 (N.D. Cal. Jan. 3, 2007) (applying totality of circumstances test to objective reasonableness of plaintiff's belief that suit for patent infringement was imminent in declaratory judgment action).

[5] Relatedly, the parties clearly understood that the identification of a specific statute, rule, or regulation is a framework better suited for summary judgment, and the Court has already resolved the issue.  Chief Kirkpatrick identified a number of relevant rules and regulations in her briefing, *see* Dkt. 93 at 12-13, and the City strenuously argued that the cited authority was inapposite.  *See* Dkt. 84 at 15-18; Dkt. 98 at 1-6.  The parties presented their positions at length during the March 31, 2022 hearing.  *See* Dkt. 105.  After this extensive examination, the Court determined that the case would proceed to trial on all but the **Liaison Assignment**.  See Dkt. 103 at 2-7.  In other words, the question of whether Chief Kirkpatrick adequately identified a statute, rule, or regulation to demonstrate the reasonableness of her belief has been fully adjudicated and decided.  If the City wanted to ask the Court to revisit that decision, the appropriate vehicle was a motion for reconsideration.  *See* L. R. 7-9 (Motion for Reconsideration).

instruct the jury on the specific statutes at issue—a practicality reflected in the CACI instruction. *See* CACI No. 4603.  Indeed, the cases the City cites in its summary judgment papers related to the requirement that Chief Kirkpatrick identify specific statutes are either decisions on a motion to dismiss or a motion for summary adjudication.  *See Killgore v. Specpro Prof. Servs., LLC*, 2019 WL 6911975, at *1 (N.D. Cal. Dec. 19, 2019) (summary judgment); *Ross v. Cty. of Riverside*, 36 Cal. App. 5th 580, 583 (2019) (summary judgment); *Tam v. Qualcomm, Inc.*, 300 F. Supp. 3d 1130, 1135 (S.D. Cal. 2018) (motion to dismiss); *Fitzgerald v. El Dorado Cty.*, 94 F. Supp. 3d 1155, 1159 (E.D. Cal. 2015) (summary judgment); *Patten v. Grant Joint Un. High Sch. Dist.*, 134 Cal. App. 4th 1378, 1381 (2005) (summary judgment).  Adding jury instructions on the specific statutes would improperly increase Chief Kirkpatrick's burden and suggest she needs to prove facts that are not required under the law.

Consistent with the statute and the decisional law, the CACI instruction on the essential factual elements for an 1102.5 claim does *not* require the Court to instruct the jury on the specific laws, regulations, or rules that were at issue during the summary judgment phase.  *See* CACI No. 4603.  Nor does it require the jury to link its findings on the reasonableness of the Chief's belief with anything else—in other words, there is *no* authority for the proposition that the jury must conclude that for any given instance of protected activity, Chief Kirkpatrick had reasonable cause to believe the information she disclosed described a violation of any particular statute, rule, or regulation.  It is enough for the jury to conclude the Chief's belief in the unlawfulness of the disclosed conduct was reasonable.

### 2.  Although legally irrelevant, AI-71 and AI-596 are rules within the meaning of Labor Code § 1102.5

For all the reasons explained above, it makes no difference whether AI-71 and AI-596 are actually "rules" within the meaning of Labor Code § 1102.5, because Chief Kirkpatrick's belief must only have been reasonable, not necessarily correct.  The Court's summary judgment order recognizes as much.  *See* Dkt. 103 at 6 ("That AI 71 apparently does not apply to the Police Commission does not mean that Plaintiff could not have reasonably, albeit mistakenly, suspected the Comment violated AI 71.").

Nevertheless, Chief Kirkpatrick agrees with the City that, to the extent the question is

1   relevant at all, the Court, not the jury, should determine whether AI-71 and AI-596 are "rules"

2   within the meaning of Labor Code § 1102.5.  From Chief Kirkpatrick's perspective, the Court has

3   already done so.  *See id.* at 6.  This issue was thoroughly briefed and argued, and the Court's

4   decision speaks for itself: "Defendant has not established that AI 71 is, as a matter of law, a mere

5   guideline rather than a 'rule.'"  *Id.*[6]  Nothing has changed in the three weeks since the Court ruled

6   on this issue, and there is no need to revisit it now.

### C.     To the extent the Court concludes that any statutes are relevant, there is no basis to exclude AI-596

Chief Kirkpatrick understands that, in the event the Court requires Chief Kirkpatrick to affirmatively establish that her reports disclose the elements of a legal violation or to similarly instruct the jury (which, for all the reasons described above, it should not), the City will ask the Court to preclude Chief Kirkpatrick from relying on AI-596 in making that showing.

As a preliminary matter, if the City wanted to exclude AI-596, it should have served and then filed a motion *in limine* to that effect.  *See* Dkt. 21 (Pretrial Order).  Chief Kirkpatrick would then have had time and space to respond to the City's contentions; in the current circumstances, Chief Kirkpatrick is left to guess at what, exactly, the City believes is the basis for excluding this particular rule.  But, plainly, the City's request seeks to exclude evidence, and a motion *in limine* "is a motion to exclude anticipated prejudicial evidence before the evidence is actually offered." *Unicolors, Inc. v. H &M Hennes & Mauritz, L.P.*, 2017 WL 11489792, at *1 (C.D. Cal. Nov. 15, 2017) (internal quotation marks omitted).  The City could have filed such a motion, pursuant to the Court's order governing the conduct of trial, but chose not to.  It should not now reap the benefit of its gamesmanship by filing a motion-in-disguise as part of its briefing on the eve of trial.

Nevertheless, based on the parties' meet and confer process prior to trial, Chief Kirkpatrick understands in a general sense that the City's basis for this request is that Chief

---

[6] The City's own additions to the Joint Exhibit List belie its position that AI-71 is merely a guideline: it included OPD internal affairs investigations that disciplined Chief Kirkpatrick for failure to comply with her obligations under AI-71.  The City cannot simultaneously claim that Administrative Instructions are not rules and at the same time highlight discipline of Chief Kirkpatrick for violation of those rules.

13

1  Kirkpatrick failed to identify AI-596 in an interrogatory response prior to the close of discovery.

2  There is simply no prejudice that could justify excluding the evidence—which is

3  undoubtedly relevant *if* the Court permits the City to argue that Chief Kirkpatrick must

4  demonstrate that her reports disclose violations of specific rules or regulations.  The City has had

5  Chief Kirkpatrick's position on AI-596 since March 10, 2022, more than two months before trial.

6  The City has briefed the applicability of AI-596 once before already, in reply to Chief

7  Kirkpatrick's opposition to its motion for summary judgment.  And of course, the City *wrote* AI-

8  596 and is intimately familiar with its contents.

9  Finally, to the extent AI-596 does not specifically appear in Chief Kirkpatrick's

10  complaint, the City was plainly on notice that Administrative Instructions would be at issue in

11  this litigation and the introduction of AI-596 certainly does not amount to a new "theory"—this is

12  still a Labor Code 1102.5(b) claim, and (again, for the reasons described above), all Chief

13  Kirkpatrick needs to demonstrate is that she reasonably believed *some* statute, rule or regulation

14  was violated.[7]  The City is not prejudiced by the jury's consideration of AI-596 as one potential

15  rule in issue, if the jury in fact considers any specific statutes at all.

16  **D.      The Police Commission and the Mayor, together, are the final decisionmakers under *Monell***

17

18  A Section 1983 plaintiff pursing claims against a municipal defendant must show that the

19  constitutional deprivation was: (1) pursuant to an expressly adopted official policy (2) caused by

20  a long-standing practice or custom; *or* (3) the decision of a "final policymaker."  *See Ellins v. City*

21  *of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013).  Both parties agree the third prong of

22  *Monell* liability is the relevant one here—whether the decision to terminate the Chief was made

23  by a "final policymaker."  Both parties further agree that the question of who the final

24  decisionmaker is for purposes of establishing municipal liability under *Monell v. Dep't of Soc.*

25  *Servs. of N.Y.*, 436 U.S. 658, 691 (1978) is one for the Court to decide—to the extent there is any

26  dispute.  In connection with the exchange of pretrial materials, the City for the first time contends

27  ───────────────────

[7] Although the City clearly had fair notice of the fact that its own Administrative Instructions might be at issue in this litigation, the Court is authorized to conform the complaint to the proof under Rule 15(b), should it conclude that AI-596 is somehow "not within the issues raised in the pleadings."

28

1851143

1   that the final decisionmaker with respect to the Chief's termination is the Mayor alone.  In other

2   words, that the Police Commission was somehow ***not*** an integral final decisionmaker with respect

3   to Chief Kirkpatrick's termination.  This is, to put it mildly, counterfactual.  It also fundamentally

4   misapplies *Monell*.

5          It is *undisputed* that the Police Commission voted to terminate the Chief's employment

6   and the Mayor joined in that decision, pursuant to Measure LL's termination authority.  The City

7   recognized as much in its motion for summary judgment, writing that "[o]n February 20, 2020,

8   the Mayor and all seven members of the Commission elected to remove Plaintiff from her

9   position as Chief of Police" (Dkt. 84 at 12) and, indeed, it stipulates in the joint pretrial order that

10  "Plaintiff was terminated by vote of the Oakland Police Commission, with Mayor Schaaf

11  joining."

12         There is simply no merit to the City's new contention that, because the Mayor *could* have

13  terminated the Chief without cause on her own, she is the sole final decisionmaker in the Chief's

14  *actual* termination.  *Monell* does not ask whether some other set of decisionmakers might be

15  "final policymakers" for some *wholly distinct* municipal course of action; rather, it asks whether

16  there was "a deliberate choice to follow a course of action . . . made from among various

17  alternatives by the official or officials responsible for establishing final policy with respect to the

18  subject matter in question."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).  For

19  purposes of Section 1983, "the identification of policymaking officials is a question of state law,"

20  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988), and "under California law, a city's

21  Charter determines municipal affairs such as personnel matters."  *Hyland v. Wonder*, 117 F.3d

22  405, 414 (9th Cir. 1997).  There is no dispute that the City Charter, through Measure LL's

23  amendments, renders the Police Commission and the Mayor jointly final policy makers for

24  termination decisions for the Chief of Police—indeed, that was a central purpose of Measure LL.

25  And again, there is no dispute that the City actually terminated Chief Kirkpatrick pursuant to that

26  Charter provision—with the Police Commission driving the process to terminate the Chief and

27  the Mayor agreeing to join the Police Commission's decision.  The Court should reject the City's

28  eleventh-hour attempt to pivot away from the acts of the Police Commission.

1851143

**E.      The City has waived any affirmative defense based on *Pickering* balancing.**

The City indicates, again for the first time in its portion of the Joint Final Pretrial Order

and in its proposed jury instructions, that it intends to rely on *Pickering* balancing as an

affirmative defense to liability for Chief Kirkpatrick's First Amendment cause of action.

Under the *Pickering* balancing test, the City bears the burden of proving that its

"legitimate *administrative* interests outweigh the [Chief]'s First Amendment rights." *Clairmont*,

632 F.3d at 1106.  The balancing test itself is a mixed question of fact and law, *see id.*, but the

Court need not resolve which aspects the Court must determine and which aspects the jury must

determine because the City has unambiguously waived this defense.

There is no room for debate that *Pickering* balancing is an affirmative defense.  *See, e.g.*,

*Ohlson v. Brady-Morris*, 444 F.Supp.3d 100, 1008 (D. Ariz. 2020) (denying summary judgment

on "*Pickering* affirmative defense"); *see also Trinidad v. Sch. City of E. Chicago*, 2021 WL

534802, at *7 (N.D. Ind. Feb. 12, 2021) (denying summary judgment on "*Pickering* balancing

defense"); *Ricciuti v. Gyzenis*, 832 F. Supp. 2d 147, 161 (D. Conn. 2011) (denying summary

judgment on "affirmative defense . . . known as the *Pickering* balancing test").  Rule 8(c)(1)

requires that "[i]n responding to a pleading, a party must affirmatively state any avoidance or

affirmative defense."  "[A] party, with limited exceptions, is required to raise every defense in its

first responsive pleading, and defenses not so raised are deemed waived." *Morrison v. Mahoney*,

399 F.3d 1042, 1046 (9th Cir. 2005).  Indeed, the City's *own* proposed jury instructions identify

the *Pickering* balancing inquiry as an "affirmative defense."  *See* Defendant's Disputed Jury

Instruction Re First Amendment Retaliation—Affirmative Defense: Legitimate Administrative

Interest.

Chief Kirkpatrick raised concerns about the adequacy of the City's affirmative defenses

on several occasions, which became the subject of Court intervention.  *See* Dkt. 68 at 4-5 (relating

history of correspondence regarding City's affirmative defenses).  Chief Kirkpatrick emphasized

that she had "an obvious need to understand the factual basis for each of [the City's] defenses . . .

so that she can explore those factual allegations through discovery and prepare to rebut the

defenses at trial."  *Id.* at 5.  The Court ultimately ordered the City to file an Amended Answer,

1  Dkt. 71, which the City did on December 20, 2021 (Dkt. 74).  That pleading contains ten

2  affirmative defenses; none of them even tangentially relate to *Pickering* balancing.  Needless to

3  say, the prejudice to Chief Kirkpatrick in allowing the City to proceed on a *Pickering* balancing

4  defense when that defense was not pleaded in the City's Amended Answer, not raised in

5  discovery, and not briefed as part of the summary judgment proceedings, is tremendous.

6  The *Pickering* analysis is intensely factual.  Chief Kirkpatrick would have sought different

7  and additional discovery bearing on the issue, most obviously by deposing City witnesses on the

8  purported overriding administrative interest in terminating the Chief despite her protected

9  activity.  And of course, had Chief Kirkpatrick known *Pickering* balancing was at issue, she

10  would have served a contention interrogatory seeking the City's basis for asserting the defense.

11  None was served because no defense was pleaded.  Now it is the eve of trial, and discovery has

12  long since closed.  Chief Kirkpatrick cannot meaningfully attack this defense or prepare to cross-

13  examine the City's witnesses.  The City should be precluded from pursuing it.

14  **F.    The Court has already determined that the jury may consider the School Incident as potential protected activity.**

15

16  Finally, Chief Kirkpatrick understands that the City intends to relitigate whether the

17  **School Incident** may properly form a part of the case at trial.  Once again, if the City wanted to

18  exclude evidence related to this event, it ought to have complied with the Court's Pretrial Order

19  and filed a motion *in limine*—it chose not to do so and the Court should not consider its new, last-

20  minute request on the eve of trial.

21  Regardless, the City's request does not merit significant discussion; the Court explicitly

22  ruled on this issue just three weeks ago, writing that:

23  > the Court rejects Defendant's insistence that Plaintiff cannot rely on
> the School Incident as a basis for her claims because it was not
> identified in the complaint. Defendant has cited no case—and the
24  > Court is not aware of any—which requires a party to identify every
> factual basis for their claim in their complaint.  There is no dispute
25  > that the incident was identified as a basis for Plaintiff's claims prior
> to the close of discovery and that Defendant had the opportunity to
26  > question Plaintiff about it at her deposition.

27  Dkt. 103 at 5.  The City has not moved for reconsideration of the Court's decision under Local

28  Rule 7-9.  More importantly, there is no *basis* to reconsider the Court's decision as nothing in the

1851143

interim justifies a different result.  The Court should reject the City's efforts to undue the Court's ruling on summary judgment.

Dated:  April 21, 2022                                  KEKER, VAN NEST & PETERS LLP


                                          By:    /s/ R. James Slaughter
                                                 JOHN W. KEKER
                                                 R. JAMES SLAUGHTER
                                                 JULIA L. ALLEN
                                                 NICHOLAS GREEN
                                                 MARIA F. BUXTON

                                                 Attorneys for Plaintiff ANNE
                                                 KIRKPATRICK

18

1851143