KEKER, VAN NEST & PETERS LLP
JOHN W. KEKER - # 49092
jkeker@keker.com
R. JAMES SLAUGHTER - # 192813
rslaughter@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
NICHOLAS GREEN - # 323959
ngreen@keker.com
MARIA F. BUXTON - # 318563
mbuxton@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:     415 397 7188

Attorneys for Plaintiff ANNE KIRKPATRICK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANNE KIRKPATRICK, | Case No. 3:20-cv-05843-JSC |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO ORDER FOLLOWING PRETRIAL CONFERENCE** |
| v. | |
| THE CITY OF OAKLAND, CALIFORNIA, a public corporation, | Date:          May 12, 2022<br>Time:         2:00 p.m.<br>Dept.:        Courtroom 8, 19th Floor<br>Judge:       Hon. Jacqueline S. Corley |
| Defendant. | Date Filed:  August 19, 2020 |
| | Trial Date:  May 16, 2022 |

1853700

In response to the Court's guidance at the pretrial conference on April 28, 2022, and the Order Following Pretrial Conference (Dkt. 147), Plaintiff files this status report regarding several trial management issues in advance of the further pretrial conference scheduled for May 12, 2022. Specifically, Plaintiff provides the following updates and seeks further guidance on three issues: (1) the protected activity at issue at trial; (2) the admissibility of testimony of certain witnesses regarding Chief Kirkpatrick's job performance; and (3) proceeding with separate liability and damages phases.

## I.   PROTECTED ACTIVITY

In response to the Court's guidance that Plaintiff should advise Defendant which statements she will be pursuing on the First Amendment claim, Dkt. 146 at 59, Plaintiff hereby notifies the Court and Defendant that she intends to proceed only on the NSC Incident, the Tow Incident, the School Incident, and the Formal Complaint (to the extent it encompasses the NSC and Tow Incidents) as the bases for both her Section 1102.5 claim and her First Amendment claim.

Because Chief Kirkpatrick will not be pursuing claims based on the Woods Incident, the Pawlik Subpoena and the OBOA Questions, the Court should exclude all evidence and argument related to those incidents.[1]   Because Plaintiff has elected to narrow the grounds on which she is pursuing her claims, evidence or argument related to the remaining instances of protected activity is irrelevant, risks confusing the issues, will waste time at trial, and thus should be excluded under Federal Rules of Evidence 402 and 403.

### A.   The Brendon Woods Comment, the OBOA Questions, the Pawlik Subpoena, and the Liaison Incident

Evidence and argument related to the Woods Incident, the OBOA Questions, and the Pawlik Subpoena are not relevant to the questions remaining to be tried: whether the Police Commission fired Chief Kirkpatrick in retaliation for her reports about the NSC Incident, the Tow Incident, the School Incident, or the Formal Complaint.  Indeed, the Commissioners have

---

[1] Evidence and argument related to the Liaison Incident report should be excluded as well since the Court ruled at summary judgment that it does not constitute protected activity under Section 1102.5.  Dkt. 103 at 7.

steadfastly denied any knowledge of those reports (*see e.g.*, Dkt. 84 at 19), so the City cannot now claim that the evidence is probative of the reasons the Commission decided to terminate the Chief.  *See* Dkt. 147 at 1 ("information that was unknown to the Police Commission or Mayor at the time they made the termination decision is generally not relevant to liability.").  The same is true for the Mayor, who did not receive the Brendon Woods Comment or Pawlik Subpoena report, and who denied any recollection of the OBOA Questions report at her deposition.

Rather, allowing testimony and argument regarding those reports would serve only to confuse the issues as it would require jurors to distinguish which reports of suspected misconduct are protected activity forming the basis of Chief Kirkpatrick's claims.  Evidence and argument as to those reports that Chief Kirkpatrick is not pursuing thus would unnecessarily prolongate, complicate, and confuse the issue at the trial.  As a result, the Court should exclude all evidence and testimony related to these reports under Federal Rules of Evidence 402 and 403.

### B.  The Formal Complaint

As noted above, Plaintiff includes the Formal Complaint as an incident of protected activity as it encompasses the NSC and Tow Incident reports.

Chief Kirkpatrick requests that the Court exclude and order that the final two paragraphs of page OAK00009842 be redacted as well as the third sentence of the first paragraph on page OAK00009840.[2]  These paragraphs express the possibility that some Commissioners were critical of Chief Kirkpatrick because of her race.  This language is wholly irrelevant to this case, which is not about racial or gender animus, and risks significant undue prejudice to Chief Kirkpatrick.

Evidence along these lines may "suggest decision on an improper basis[,]" *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 993 (9th Cir. 2009) (internal quotations omitted), and in particular, "an emotional one."  Adv. Comm. Notes to Fed. R. Evid. 403 (1972).  It is unsurprising, then, that Courts have no trouble concluding evidence of racial animus with "very low probative value" poses "the real danger that it will prejudice the jury."  *United States v. Johnson*, 2015 WL 4747309, at *9 (N.D. Cal. Aug. 11, 2015).  Indeed, courts have been forced to issue curative instructions where one party sponsors irrelevant evidence of racial animus and the

---

[2] The Formal Complaint is in the record at Dkt. 86-12.

opposing party has not put that animus in issue.  *See DCD Partners, LLC v. Transamerica Life Ins. Co.*, 2018 WL 3770030, at *5 (C.D. Cal. Aug. 1, 2018).

This document was also the source of significant questioning related to racial animus during Chief Kirkpatrick's deposition, which also should be excluded under Rule 403, given its extremely low probative value with respect to the issues for trial as compared with its potential to confuse or prejudice the jury.  For example, Chief Kirkpatrick was asked "Do you believe that Commissioners Harris and Jackson were racist in the way that they treated you?"  Plainly, the answer to that question is not relevant to any of the issues in this case, but is likely to confuse and prejudice the jury.  This is not a race or gender-based discrimination case: Chief Kirkpatrick has not pleaded any claims based on her membership in any protected class.

Therefore, Chief Kirkpatrick requests that the Court order that the last two paragraphs on page OAK00009842 be redacted as well as the third sentence of the first paragraph on page OAK00009840, and related questioning about racial animus that is unrelated to the claims at issue in this case be precluded.

## II.    WITNESSES REGARDING JOB PERFORMANCE

At the pretrial conference, the Court considered Defendant's Motion *in Limine* No. 2 to preclude from testifying five witnesses knowledgeable as to Chief Kirkpatrick's job performance, including Nancy O'Malley, Bobby Hookfin, Eric Milina, Sekou Millington, and Bishop Bob Jackson.  The Court granted Defendant's Motion *in Limine* No. 2 without prejudice to Plaintiff making an offer for proof that the witness will testify about information regarding Plaintiff's performance of which the Police Commission or Mayor would have been aware prior to the termination decision.  Dkt. 147 at 5.  Plaintiff makes such an offer of proof below.

In her opposition to Defendant's motion *in limine*, Chief Kirkpatrick requested that, if the Court were to exclude Plaintiff's witnesses who would testify about the Chief's performance because they were not involved in the decision to terminate the Chief, that the City's witnesses who are similarly situated also be excluded.  Specifically, the City has indicated that it intends to call three witnesses (LeRonne Armstrong, Wilson Lau, and Aaron Smith), who had no role in the decision to terminate the Chief, to testify regarding Chief Kirkpatrick's job performance.  The

1   Court did not reach that request at the pretrial conference or in its following order and, as

2   described more fully below, Plaintiff asks the Court to exclude those witnesses.

3       A.       **Plaintiff's Offers of Proof**

4           The Court explained that Plaintiff must make an offer of proof regarding the testimony

5   expected from witnesses subject to Defendant's Motion *in Limine* No. 2, Dkt. 117, demonstrating

6   that the jury could draw the inference that the Police Commission or Mayor would have been

7   aware of the expected testimony when they made the decision to terminate Chief Kirkpatrick,

8   Dkt. 146 at 45-47.  Plaintiff according provides the following offers of proof:

9           **Captain Bobby Hookfin**: Captain Bobby Hookfin served as Chief Kirkpatrick's Chief of

10  Staff and, in that capacity, was at Chief Kirkpatrick's side during several of her interactions with

11  the Police Commission and the Mayor, and throughout her day-to-day activities as Chief.

12  Captain Hookfin will testify as to several interactions he personally witnessed, and his own

13  reaction to the Oakland Black Officers Association (OBOA) letter.

14          First, Captain Hookfin organized and attended a series of "Barbershop Forums" to

15  encourage communication between the Oakland Police Department and the community, including

16  incarcerated individuals.  Captain Hookfin attended one of these Barbershop Forums and

17  witnessed Chief Kirkpatrick engaging with the community.  Chief Kirkpatrick made a speech at

18  this event that was televised, of which the Police Commissioners would have likely been aware.

19  Captain Hookfin will testify as to his reaction to the speech and the reaction of those in the

20  audience and in the community.  This evidence is relevant to show that the Police Commission

21  was aware that Chief Kirkpatrick had a unique capacity for reform, was a good fit for Oakland

22  (contrary to the City's narrative), and was well-liked by the Oakland community.

23          Second, Captain Hookfin accompanied Chief Kirkpatrick to several Police Commission

24  meetings in which he observed the Commissioners' demeanor towards Chief Kirkpatrick,

25  including one incident in which Ginale Harris indicated her disrespect for Chief Kirkpatrick.

26  These interactions are directly relevant to show the Commissioners' animus towards Chief

27  Kirkpatrick that developed after she engaged in protected activity.

28          Third, as a member of the OBOA, Captain Hookfin will testify about his involvement (or

lack thereof) in drafting the OBOA Letter that accused Chief Kirkpatrick of failing to recognize race and equity issues in OPD, and his response to it.  This letter is central to the City's suggestion that Chief Kirkpatrick was terminated because she was underperforming, particularly with respect to race and equity issues in OPD.  Captain Hookfin's testimony is relevant because it tends to show that the OBOA Letter itself did not represent the views of all of its members (which the commission was likely ware) and that Chief Kirkpatrick was performing well at her job.  This is relevant context that tends to show that the Commissioners decision to terminate was retaliatory rather than legitimate.

**Chief Sekou Millington:** Sekou Millington is the current Chief of the Tracy Police Department and was a Captain in the Oakland Police Department while Chief Kirkpatrick served as Chief.  Chief Millington will testify about the Heintz Study, which was commissioned by the OPD while Chief Kirkpatrick was Chief to examine police discipline disparities within the OPD.  Chief Millington will testify that the study was well known within the department and the Commission (Commissioner Jackson, for example, testified in her deposition that she knew of the study).  Chief Millington will discuss the purpose of the study, its origins, and its relationship to the OBOA Letter, which the Commission claims informed its decision to terminate Chief Kirkpatrick.

**B.     Defense Witnesses: LeRonne Armstrong, Wilson Lau, Aaron Smith**

In granting without prejudice the request to exclude testimony from Plaintiff's witnesses subject to Defendant's Motion *in Limine* No. 2, the Court did not reach the question of whether the testimony of defense witnesses that Plaintiff identified in opposition to the motion should be excluded for the same reason—namely that they too are not decisionmakers on Plaintiff's termination yet the City intends to offer their testimony regarding Plaintiff's performance.  Plaintiff renews her request that the Court exclude testimony of LeRonne Armstrong, Wilson Lau, and Aaron Smith based on the same rationale that the Court has to Plaintiff's performance witnesses.[3]

---

[3] Plaintiff also raised Brendon Woods, but the Court separately addressed his testimony at the pretrial conference, ultimately suggesting that the City must provide an offer of proof as to his testimony.  Dkt. 147 at 3.

PLAINTIFF'S RESPONSE TO ORDER FOLLOWING PRETRIAL CONFERENCE
Case No. 3:20-cv-05843-JSC

1853700

1        The City should not have license to present evidence that the Commissioners would have

2   terminated her because of her alleged shortcomings, offer a parade of witnesses corroborating the

3   Commissioners' narrative, and prevent the Chief from offering any witnesses to challenge that

4   narrative.  As the Court has recognized, "information that was unknown to the Police

5   Commission or Mayor at the time they made the termination decision is generally not relevant to

6   liability."  Dkt. 147 at 1.  As a result, the City should be precluded from calling the following

7   witnesses on its witness list, who are offered to corroborate the Commission's narrative that the

8   City would have terminated her for legitimate reasons:

9        **LeRonne Armstrong**, current Chief of Police, will likely testify regarding Chief

10  Kirkpatrick's job performance with respect to "his interactions with [her]" during her tenure, her

11  role in the "backsliding or progress" on NSA compliance that OPD experienced, and "the City's

12  investigation into the shooting death of Joshua Pawlik".  *See* Dkt. 120-3 at 2 (City's Witness

13  List).[4]

14       **Wilson Lau**, former OPD Internal Affairs Captain, will likely testify regarding Chief

15  Kirkpatrick's job performance with respect to Chief Kirkpatrick's conduct and handling of the

16  shooting death of Joshua Pawlik.  *See id.* at 4.[5]

17       **Aaron Smith**, President of the Oakland Black Officers Association (OBOA), will likely

18  testify regarding Plaintiff's job performance with respect to "reports to Plaintiff concerning

19  racism within the Oakland Police Department," and "his interactions with Plaintiff."  *See id.* at 5.[6]

20       If the Court excludes Plaintiff's witnesses who were not involved in the decision to

21  terminate her, it should similarly exclude these witnesses.

22

23  _____

   [4] The City also indicates that LeRonne Armstrong will testify as to his interactions with the

24  Police Commission but it is unclear and unexplained how that is relevant to the claims and
defenses.

25     [5] To the extent the City intends to offer testimony of Wilson Lau regarding the Pawlik

26  investigation beyond Plaintiff's conduct it is unclear and unexplained how that is relevant to the
claims and defenses.

27     [6] The City also indicates that it intends to offer testimony from Aaron Smith as to "his leadership

28  role within the Oakland Black Officers Association" as well as "his interactions with the Police
Commission and Police Commissioners."  It is unclear and unexplained how either subject is
relevant to the claims and defenses.

1853700

C.     **Witness Availability**

At the pretrial conference, counsel for the City indicated that the City may ask to call certain witnesses out of order should it be able to establish good cause to do so.  At Plaintiff's request, the City provided the dates that any current or former City employees may be unavailable.  While nine out of the twenty-one City witnesses have raised scheduling issues, Plaintiff will do her best to accommodate the scheduling conflicts that have been raised.  However, Plaintiff requests that the Court address a scheduling issue related two defense witnesses who are not on Plaintiff's witness list, are currently employed by the City, and are unavailable May 20-28: LeRonne Armstrong and Aaron Smith.  For the reasons described above, their testimony should be excluded in its entirety, but to the extent the Court allows their testimony, Plaintiff vehemently objects to allowing their testimony during the first three days of trial in the middle of Plaintiff's case in chief.  Neither witness is on Plaintiff's witness list, and inserting the Defendant's case in the first three trial days would severely undermine Chief Kirkpatrick's ability to present her case.

The City has been well aware of the trial dates since November 2020 when the Court set the case schedule.  As a result, the City could have and should have advised its witnesses that they be available for at least the seven scheduled court days, including through May 24.  Moreover, LeRonne Armstrong and Aaron Smith are both employed by the City and could be directed to appear on another date.  Both also have been deposed and the City may introduce their depositions if they are unavailable.  The City should not now be permitted to interfere with Plaintiff's ability to present her case by calling those defense witnesses in the first days of trial.

III.    **PHASING LIABLITY AND DAMAGES**

The Court ordered that the parties consider whether to try this case in phases, with damages tried separately in the event the jury finds for Plaintiff on liability. Dkt. 147 at 2. Having considered the Court's question, Plaintiff requests that the Court proceed in two phases as follows:

**Phase 1**: **Liability**. The liability phase would include all evidence necessary to determine liability.  Because proving that she was harmed as a result of her termination is an essential

element of her Section 1102.5 claim (*See e.g.*, CACI No. 4603), Chief Kirkpatrick would include in the liability phase evidence sufficient to prove harm, including testimony related to her mental and emotional pain and suffering.  Phase 1 otherwise would not include any evidence related to damages.

**Phase 2**: **Damages**.  The second phase would include testimony from Chief Kirkpatrick related to economic damages, including her efforts to mitigate her damages; testimony from Plaintiff's expert James Mills related to the amount of economic damages; and evidence related to Defendant's mitigation or after-acquired-evidence defense that either party may seek to offer. Including all evidence and argument related to economic damages in one phase is the most conducive to expedition and economy, and will also simplify the issues and reduce the danger of unnecessary confusion and prejudice to Chief Kirkpatrick.

Plaintiff requests this phasing because proceeding with two phases will be more efficient and will reduce the risk of undue prejudice to Chief Kirkpatrick.  There is no prejudice to the City to proceeding in this manner.

First, phasing will reduce the time and complexity of the liability phase of the trial, eliminating the need for testimony or evidence about economic damages, mitigation efforts, and after-acquired evidence.  If the jury finds no liability, the jury, Court, and parties would not need to spend the time on the damages phase.

Second, phasing the case in this manner also significantly reduces the risk of undue prejudice to Chief Kirkpatrick related to evidence the City intends to offer with respect to its after-acquired evidence and mitigation defenses.  The City is pursuing an after-acquired evidence defense based in part on a post-termination August 2020 report prepared by Robert Warshaw, which is subject Plaintiff's Motion *in Limine* No. 1.  While Plaintiff maintains that report should be excluded in its entirety for the reasons explained in her motion, Dkt. 112, the Court indicated that the post-termination report may be allowed for the limited purpose of consideration of the Defendant's after-acquired evidence defense.  *See* Dkt. 147 at 2; Dkt. 146 at 7.  If the Court is not going to exclude the report in its entirety, then proceeding in two phases will decrease the chance of the jury improperly relying on the post-termination report in considering the Defendant's

"same decision" defense, which is focused on whether the City would have terminated Chief Kirkpatrick "at the time it made its actual decision," *i.e.*, in February 2020, for legitimate reasons. *See* CACI Model Jury Instructions No. 4602 (Affirmative Defense—Same Decision, (Lab. Code, § 1102.6)) ("[W]hen we refer to a same-decision showing, we mean proof that the employer, in the absence of any discrimination, would have made the same decision at the time it made its actual decision." (emphasis in original) (quoting *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 224 (2013))).  Without the two separate phases, there is a significant risk that a jury would believe these reports are evidence of Plaintiff's performance during the relevant time period, especially given that the City presented the August 17, 2020 report for precisely this purpose in its summary judgment motion.  *See* Dkt. 84 at 5 (discussing Van Dusen Decl. Ex. 27).  It may be difficult for a jury to understand that Plaintiff's actual performance during the time is irrelevant if none of the decisionmakers were aware of it at the time they decided to terminate her.  *See Harris*, 56 Cal. 4th at 224.  Phasing will also avoid jury confusion as to how any mitigation evidence relates to liability.

For these reasons, Plaintiffs request that the Court order the case to proceed on phases as described above.

## IV.    CONCLUSION

Chief Kirkpatrick respectfully requests that the Court: (1) exclude evidence and argument related to the OBOA Questions, Pawlik Subpoena, Brendon Woods Comment, and Liaison Incident reports; (2) order that the last two paragraphs of the Formal Complaint on page OAK00009842 be redacted as well as the third sentence of the first paragraph on page OAK00009840, and preclude related questioning about racial animus that is unrelated to the claims at issue in this case; (3) allow testimony from Bobby Hookfin and Sekou Millington; (4) preclude testimony from LeRonne Armstrong, Wilson Lau, and Aaron Smith; and (5) order two separate phases as to liability and damages, as described above.

1853700

1
2

Dated:  May 4, 2022

KEKER, VAN NEST & PETERS LLP

3
4
5
6

By:   /s/ R. James Slaughter
JOHN W. KEKER
R. JAMES SLAUGHTER
JULIA L. ALLEN
NICHOLAS GREEN
MARIA F. BUXTON

7

Attorneys for Plaintiff ANNE
KIRKPATRICK

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1853700