BARBARA PARKER, City Attorney (State Bar No. 69722)
MARIA BEE, Chief Assistant City Attorney (State Bar No. 167716)
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone: 510.238.2964
Facsimile: 510.238.6500
Email: bjparker@oaklandcityattorney.org
mbee@oaklandcityattorney.org

JONATHAN R. BASS (State Bar No. 75779)
KATHARINE VAN DUSEN (State Bar No. 276021)
KENNETH NABITY (State Bar No. 287927)
LAURA R. SEEGAL (State Bar No. 307344)
MARCIA VALADEZ VALENTE (State Bar No. 321852)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663
Email: ef-jrb@cpdb.com
ef-ktv@cpdb.com
ef-kpn@cpdb.com
ef-lrs@cpdb.com
ef-mvv@cpdb.com

Attorneys for Defendant
CITY OF OAKLAND

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ANNE KIRKPATRICK, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF OAKLAND, CALIFORNIA, a public corporation,<br><br>Defendant. | Case No. 3:20-cv-05843-JSC<br><br>**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50(a)**<br><br>Action Filed: August 19, 2020<br>Trial Date: May 16, 2022 |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................1

ARGUMENT .................................................................................................................................2

    I.    LEGAL STANDARD. ..............................................................................................2

    II.    PLAINTIFF DID NOT REASONABLY BELIEVE THAT SHE WAS REPORTING UNLAWFUL CONDUCT. ...........................................................3

        A.    The NSC Report. .........................................................................................5

        B.    The Tow Report. .........................................................................................6

        C.    The Formal Complaint. ...............................................................................6

        D.    The School Incident Report. ........................................................................7

    III.    THERE WAS NO FIRST AMENDMENT-PROTECTED ACTIVITY. ..................8

        A.    Plaintiff Spoke As An On-Duty Police Chief, Not A Private Citizen. ...........8

        B.    Plaintiff's Reports Did Not Encompass Matters Of Public Concern. ..........10

            1.    The Reports Do Not Address Matters Of Public Concern. ..............11

            2.    The Reports Were Internal Government Communications. .............12

            3.    The Reports Were Motivated By Bureaucratic Infighting, Or Reporting Requirements. ...............................................................12

    IV.    THERE WAS NO RETALIATION. .......................................................................13

        A.    The Commissioners Were Not Aware Of Any "Whistleblowing" Reports. .....................................................................................................14

        B.    The Reports Did Not Contribute To The City's Decision. .........................15

CONCLUSION ............................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Ace v. Aetna Life Ins. Co.*,
　139 F.3d 1241 (9th Cir. 1998)...................................................................................1

*Akers v. Cnty. of San Diego*,
　95 Cal. App. 4th 1441 (2002)....................................................................................4

*Archibald v. Cty. of San Bernardino*,
　No. EDCV1601128ABSPX, 2018 WL 6017032 ......................................................2

*Bangert Bros. Cons. Co., Inc. v. Kiewit Western Co.*,
　310 F.3d 1278 (10th Cir. 2002).................................................................................1

*Bos. Sci. Corp. v. Johnson & Johnson*,
　550 F. Supp. 2d 1102 (N.D. Cal. 2008) ....................................................................2

*Canupp v. Children's Receiving Home of Sacramento*,
　181 F. Supp. 3d 767 (E.D. Cal. 2016).....................................................................15

*Carter v. Escondido Union High Sch. Dist.*,
　148 Cal. App. 4th 922 (2007)....................................................................................4

*Clairmont v. Sound Mental Health*,
　632 F.3d 1091 (9th Cir. 2011).................................................................................13

*Clark v. City of Oakland*,
　No. C 06-06872 CRB, 2008 WL 2357321 (N.D. Cal. June 6, 2008),
　*aff'd*, 385 F. App'x 665 (9th Cir. 2010) ...................................................................9

*Conn v. W. Placer Unified Sch. Dist.*,
　186 Cal. App. 4th 1163 (2010), *as modified on denial of reh'g* (Aug. 10, 2010)........4

*Connick v. Myers*,
　461 U.S. 138 (1983) ................................................................................................10

*CTC Glob. Corp. v. Huang*, No.
　SACV 17-02202 AG (KESx),
　2019 WL 4164971 (C.D. Cal. July 29, 2019) .........................................................15

*Dahlia v. Rodriguez*,
　735 F.3d 1060 (9th Cir. 2013)...................................................................................9

*Desrochers v. City of San Bernardino*,
　572 F.3d 703 (9th Cir. 2009)..................................................................10, 11, 12, 13

*Elliott v. Versa CIC, L.P.*,
　No. 16-CV-0288-BAS-AGS, 2019 WL 414499 (S.D. Cal. Feb. 1, 2019) .................2

*Eng v. Cooley*,
    552 F.3d 1062 (9th Cir. 2009)...........................................................................................8, 9

*Filipovic v. K & R Express Sys., Inc.*,
    176 F.3d 390 (7th Cir. 1999).................................................................................................15

*Fitzgerald v. El Dorado Cnty.*,
    94 F. Supp. 3d 1155 (E.D. Cal. 2015)......................................................................................4

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006)..................................................................................................................9

*Gilbrook v. City of Westminster*,
    177 F.3d 839 (9th Cir. 1999).................................................................................................13

*Gray v. Perry*,
    No. 215CV05642CASJCX, 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020)................................2

*Howard v. City of Coos Bay*,
    871 F.3d 1032 (9th Cir. 2017)..................................................................................................8

*Jocks v. Tavernier*,
    316 F.3d 128 (2d Cir. 2003)......................................................................................................1

*Johnson v. Multnomah Cty.*,
    48 F.3d 420 (9th Cir. 1995)....................................................................................................11

*Kawaoka v. City of Arroyo Grande*,
    17 F.3d 1227 (9th Cir. 1994)..................................................................................................14

*Lawson v. PPG Architectural Finishes, Inc.*,
    12 Cal. 5th 703 (2022).......................................................................................................4, 13

*Lillie v. ManTech Int'l. Corp.*,
    No. 217CV02538CASSSX, 2019 WL 3387732 (C.D. Cal. July 26, 2019),
    aff'd, 837 F. App'x 455 (9th Cir. 2020) ..................................................................................2

*McRae v. Dep't of Corr. & Rehab.*,
    142 Cal. App. 4th 377 (2006).................................................................................................13

*Morgan v. Regents of Univ. of Cal.*,
    88 Cal. App. 4th 52 (2000).....................................................................................................14

*Mueller v. Cnty. of Los Angeles*,
    176 Cal. App. 4th 809 (2009)...................................................................................................4

*Patten v. Grant Joint Union High Sch. Dist.*,
    134 Cal. App. 4th 1378 (2005).................................................................................................4

*Pickering v. Bd. of Education*,
 391 U.S. 563 (1968) .................................................................................................................10

*Posey v. Lake Pend Oreille Sch. Dist. No. 84*,
 546 F.3d 1121 (9th Cir. 2008) ....................................................................................................9

*Pyke v. Arcadis, US Inc.*,
 35 F. Supp. 3d 1093 (N.D. Cal. 2014) (Breyer, J.), *aff'd*, 649 F. App'x 593 (9th
 Cir. 2016) ...................................................................................................................................9

*Reeves v. Sanderson Plumbing Prods., Inc.*,
 530 U.S. 133 (2000) ...................................................................................................................2

*Roe v. City & County of San Francisco*,
 109 F.3d 578 (9th Cir. 1997) ....................................................................................................12

*Scarbrough v. Morgan County Board of Education*,
 470 F.3d 250 (6th Cir. 2006) ....................................................................................................14

*Sharp v. Am. Tel. & Tel. Co.*,
 No. C 99–1065 TEH, 2000 WL 970665 (N.D. Cal. 2000) ........................................................2

*Tucker v. State of Cal. Dep't of Educ.*,
 97 F.3d 1204 (9th Cir. 1996) ....................................................................................................10

*Villiarimo v. Aloha Island Air, Inc.*,
 281 F.3d 1054 (9th Cir. 2002) ..................................................................................................15

*Wiele v. Delaware N. Companies, Inc.*,
 No. 2:21-cv-07271-SB-AS, 2022 WL 714392 (C.D. Cal. Mar. 4, 2022), and (b) .....................14

**Statutes & Rules**

42 U.S.C. § 1983 ..............................................................................................................................1, 8

California Labor Code § 1102.5 ...............................................................................................1, 3, 4, 8

Fed. R. Civ. P. 50 .............................................................................................................................1, 2, 8

Oakland Municipal Code § 2.25.060(A)(2) ........................................................................................11

**INTRODUCTION**

Plaintiff Anne Kirkpatrick having been fully heard on her claims, Defendant City of Oakland now moves for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure. Her state law claim, under California Labor Code section 1102.5, requires a favorable finding on both of these issues: (a) that she reasonably believed that she was reporting unlawful activity, and (b) that she was retaliated against for making such reports. Her federal claim, under Section 1983, requires a favorable finding on both of these issues: (a) that she was exercising her First Amendment rights, and (b) that she was retaliated against for doing so.

A reasonable jury would not have a legally sufficient evidentiary basis to find for Plaintiff on either set of issues.

Anne Kirkpatrick did indeed complain about members of the Police Commission, and she had a particularly well-honed knife out for one them, Ginale Harris, but her complaints were never about public corruption, as she now claims. And those reports were not, and could not have been, a contributing factor in the unanimous vote of the Police Commission, and the decision of the Mayor, to terminate her.

By this motion, the City is requesting that judgment be entered in its favor on both the Labor Code and Section 1983 claims. In the alternative, should the Court determine that judgment as a matter of law is not appropriate on one of the claims, the City requests that judgment be entered in its favor on the other claim, or on particular issues that should not go to the jury.[1]

///
///
///

---

[1] If the Court does not grant judgment on the entire case, it may resolve particular claims or issues within a claim and remove them from the jury's consideration. Fed. R. Civ. P., Rule 50, 1993 Advisory Committee Note ("judgments as a matter of law in jury trials may be entered . . . with respect to issues or defenses that may not be wholly dispositive of a claim or defense"); *Ace v. Aetna Life Ins. Co.*, 139 F.3d 1241, 1247 (9th Cir. 1998) (granting JMOL on punitive damages only); *Jocks v. Tavernier*, 316 F.3d 128, 136-37 (2d Cir. 2003) (partial JMOL for defendant on emergency measure justification but not on self-defense claim); *Bangert Bros. Cons. Co., Inc. v. Kiewit Western Co.*, 310 F.3d 1278, 1286-87 (10th Cir. 2002) (partial JMOL for plaintiff on fraudulent misrepresentation claim but not on damages).

# ARGUMENT

## I. LEGAL STANDARD.

Judgment as a matter of law should be granted when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue …." Fed. R. Civ. P. 50(a)(1). In deciding a motion for judgment as a matter of law, the Court reviews the record as a whole, drawing all *reasonable* inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-151 (2000).

"The question in a motion for judgment as a matter of law is whether there is substantial evidence to support the jury finding for the non-moving party." *Bos. Sci. Corp. v. Johnson & Johnson*, 550 F. Supp. 2d 1102, 1109 (N.D. Cal. 2008). "Substantial evidence is more than a scintilla of evidence." *Id.* In fact, where the non-moving party has the burden of proof at trial, an absence of evidence to support the non-moving party's case compels judgment as a matter of law. *Sharp v. Am. Tel. & Tel. Co.*, No. C 99–1065 TEH, 2000 WL 970665, at *2 (N.D. Cal. 2000) ("the moving party can prevail merely by 'pointing out to the District Court . . . that there is an absence of evidence to support the nonmoving party's case'").

"The prior denial of summary judgment does not preclude a district court from later granting judgment as a matter of law pursuant to Rule 50 because the latter tests the sufficiency of the evidence actually presented at trial." *Gray v. Perry*, No. 215CV05642CASJCX, 2020 WL 1275221, at *2 (C.D. Cal. Mar. 16, 2020); *Elliott v. Versa CIC, L.P.*, No. 16-CV-0288-BAS-AGS, 2019 WL 414499, at *6 (S.D. Cal. Feb. 1, 2019) (same); *Archibald v. Cty. of San Bernardino*, No. EDCV1601128ABSPX, 2018 WL 6017032, at *4 n.3 (C.D. Cal. Oct. 2, 2018 (same); *Lillie v. ManTech Int'l. Corp.*, No. 217CV02538CASSSX, 2019 WL 3387732, at *22 (C.D. Cal. July 26, 2019) (granting JMOL after denying summary judgment on the same claims, noting that "[n]ow, viewing all the evidence in the light most favorable to plaintiff, the Court finds that the evidentiary record does not permit a reasonable jury to" find in favor of the plaintiff), *aff'd*, 837 F. App'x 455 (9th Cir. 2020).

## II. PLAINTIFF DID NOT REASONABLY BELIEVE THAT SHE WAS REPORTING UNLAWFUL CONDUCT.

California Labor Code Section 1102.5(b) provides:

> (b) An employer . . . shall not retaliate against an employee for disclosing information . . . to a government or law enforcement agency . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

Did Ms. Kirkpatrick reasonably believe that any of her "reports" — regarding the **NSC Incident**, the **Tow Incident**, and the **School Incident** — disclosed such a violation? The answer is no, she did not, and no reasonable jury could find that she did.[2]

Ms. Kirkpatrick "argued" to the jury — and we use the word "argued" intentionally — that it was obvious on the face of the reports that she was disclosing acts of public corruption. Of course, she needed to say that "public corruption" was obvious on the face of the reports, because the reports themselves make no mention of public corruption. In fact, not only is public corruption not obvious on the face of the reports, and not only did she never use that phrase (or any phrase remotely equivalent to it) in her reports, but the notion of public corruption is not even *discernable* from the reports.[3]

Section 1102.5 makes it unlawful to retaliate against an employee who discloses information revealing a "violation of state or federal statute, or a violation of or noncompliance

---

[2] No sufficient evidence would support a finding that any whistleblower report even existed. This isn't a question of Kirkpatrick's reasonable belief; it's a matter of objective reality. The reports simply are not what plaintiff portrays them as. A defendant in a traffic collision case may adduce substantial evidence that the light was green by so testifying, but not if there was no traffic light at the intersection in question. Similarly, Kirkpatrick can endlessly recite - as she did - that she reasonably believed that she was reporting unlawful conduct, but (a) she is not the arbiter of the reasonableness of her beliefs, and (b) no *report* of unlawful conduct was actually made.

[3] Because the notion of "retaliation" only makes sense where the employer *understood* that the report disclosed a violation of law, the statute makes clear that what the employee must have reasonably believed is not just that the report related in some way to a violation, but that it *disclosed* the violation. If the report is written in a code that only the employee understands, or is so indirect, elliptical or vague that the employer could not be expected to realize that it *disclosed* unlawful conduct, then the employee could not reasonably *believe* that it did.

with a local, state, or federal rule or regulation[.]" Cal. Lab. Code § 1102.5(b). Plaintiff "must be able to point to some legal foundation for [her] suspicion — some statute, rule or regulation which may have been violated by the conduct [s]he disclosed." *Fitzgerald v. El Dorado Cnty.*, 94 F. Supp. 3d 1155, 1172 (E.D. Cal. 2015). The employee's reasonable belief must be reflected in the disclosure itself. *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1385 (2005), *disapproved on other grounds by Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 711 (2022), (the disclosures "do not show any belief on Patten's part that she was disclosing a violation of state or federal law in any sort of whistleblowing context, as required for a section 1102.5(b) whistleblowing action").

Section 1102.5 covers disclosures of legal violations, not personnel matters. *Patten*, 134 Cal. App. 4th at 1384–85. This limitation relieves the judiciary from micromanaging employee disputes. *Id*. at 1385 (citing *Akers v. Cnty. of San Diego*, 95 Cal. App. 4th 1441, 1455 (2002)); *see also Carter v. Escondido Union High Sch. Dist.*, 148 Cal. App. 4th 922, 934–35 (2007) (terminated coach's communication was an "internal personnel disclosure" and not whistleblowing when he reported to another coach that a hospitalized student athlete's failed liver was due to the consumption of a creatine drink); *Conn v. W. Placer Unified Sch. Dist.*, 186 Cal. App. 4th 1163, 1182 (2010), *as modified on denial of reh'g* (Aug. 10, 2010) (teacher's complaints about unruly students, improper special-education screenings, and failure of the school to perform special-needs assessments were internal administrative or personnel decisions rather than whistleblowing). "Matters such as transferring employees, writing up employees, and counseling employees are personnel matters." *Mueller v. Cnty. of Los Angeles*, 176 Cal. App. 4th 809, 822 (2009).

Plaintiff asserts that four separate reports constitute protected activity under Section 1102.5, because each disclosed a violation of law or, at least, reflected a reasonable belief that a law had been violated. But the reports themselves do not disclose a violation of any law, and Kirkpatrick could not have reasonably believed that they did.

///

///

### A. The NSC Report.

With respect to the **NSC Report**, the memo that Plaintiff passed along — and that she characterizes as an act of whistleblowing — recounts Commissioner Harris's complaining to the NSCs about illegal dumping in an Oakland neighborhood. TX0012. In other words, Harris was *reporting* unlawful activity. Plaintiff says that this was "corrupt" because she was informing the NSCs about illegal dumping *in her own neighborhood*, and was thus seeking a private benefit. Tr. 5/17/22, 288:2-9. It is preposterous to suggest that bringing to the attention of the Police Department illegal activity occurring in one's neighborhood is equivalent to seeking a private benefit, or a diversion of police resources. The police *want* people to report unlawful activity, regardless of where it is occurring. And, of course, Chief Kirkpatrick knew that perfectly well, which explains why she makes no mention in her "report" of any public corruption.

What Kirkpatrick actually *said* in her report most concerned her was Commissioner Dorado's statement that the Ghost Ship fire could have been prevented had the NSCs (i.e., the Police Department) been doing their job. TX0012-0001. That should indeed have been of concern to Kirkpatrick, since the City was then the target of numerous wrongful death suits resulting from that tragedy, and the plaintiffs in those actions were accusing the Police Department of having failed in its duty to protect life and property. She did *not* say that she was concerned that Harris had committed some sort of unethical act in complaining about illegal dumping, and she could not reasonably have believed that her report disclosed such an accusation. It didn't. The notion that Kirkpatrick believes that she was reporting an act of public corruption is an after-the-fact lawyer's concoction. There is no evidence that would support a jury finding that Kirkpatrick had that in mind at the time.[4]

///

///

---

[4] The Court suggested at the May 24, 2020 hearing that the **NSC Report** might possibly be read to disclose a matter of public concern, i.e., seeking a private benefit. But no reasonable jury could draw that inference, where the report makes no such claim. The point of whistleblowing is to make a *sound*. Kirkpatrick's report was wholly silent on the public corruption claim.

### B. The Tow Report.

With respect to the tow report, Plaintiff's theory of public corruption is that Commissioner Harris was asking Chief Kirkpatrick to "fix" her towing ticket. Tr. 5/17/22, 156:10-22. But that's a slur against Ms. Harris. Ms. Harris came to the police station, where she complained that her car should not have been towed, and was escorted up to see the Chief, who immediately accused her of seeking a favor. *Id.* at 262:15-21; 279:9-23.

As Kirkpatrick herself recounts it, Ms. Harris immediately took umbrage — she was offended by the accusation, and she denied it. *Id.* at 276: 10-12. On the witness stand, Kirkpatrick "explained" why she gave no credence to Harris' reaction: people in general often act offended when they're caught out in their misbehavior. *Id.* at 265: 18-22. But that made no sense. If Harris was looking to have the Chief forgive her ticket as a favor, then what would be the point of denying it? And what basis did Kirkpatrick have for assuming that Ms. Harris was asking to have her ticket "fixed"? None.

It is apparent on the fact of the tow report that Kirkpatrick had no reasonable belief that she was disclosing any unlawful conduct on Harris' part. She was reporting what she regarded as rude behavior, not "corruption".[5]

### C. The Formal Complaint.

At the October 10, 2019 Police Commission meeting, Virginia Gleason, Kirkpatrick's deputy, was scheduled to provide a report on the department's diversity and discrimination in hiring. TX0164. The meeting became contentious, with Ms. Gleason calling a question "beyond offensive," and Commissioner Harris criticizing Ms. Gleason's report as "disgraceful." TX0442. Plaintiff intervened, dismissed Ms. Gleason from the meeting, chastised the Commission, and demanded an apology. Tr. 5/17/22, 168:14-169:14; TX0442.

---

[5] It is important to note that Plaintiff's retaliation claim is *not* based on her interaction with Commissioner Harris in her office about the towing of Harris' car. Harris testified that she took offense at Kirkpatrick's behavior in that meeting, and Harris later shared her feeling of offense with Commissioner Jackson, but Kirkpatrick has never claimed that her *discussion* with Harris was an act of whistleblowing (or of protected First Amendment speech). To the extent, therefore, that any Commissioner felt that Kirkpatrick acted badly in that interaction, and had it in mind when the termination decision was made, that would not constitute unlawful retaliation.

Rather than seeking to de-escalate the situation, Kirkpatrick opted to further inflame tensions. In the Commission's view, "a veteran law enforcement officer and seasoned administrator would have sought to de-escalate the matter, ease the tension, and revisit the matter at a later time in a more productive fashion. Instead, you used your time at the podium to interrupt and yell at the Commission." TX0036.

The next day, Plaintiff emailed her **"Formal Complaint."** TX0164. That document contains no new information about a violation of any law related to the NSC Incident or the **Tow Incident**. The entire reference to those prior incidents is contained in the second-to-last paragraph, in which she speculates that Commissioner Harris' conduct at the Commission meeting was somehow motivated by her experience, a year earlier, in having her car towed.[6]

### D. The School Incident Report.

With respect to the **School Incident** report (TX0256), Plaintiff was tongue-tied when asked to explain what private benefit she believed Harris was seeking when she supposedly showed her badge to a San Francisco police officer while she was attempting to pick up her son from his school. Tr. 5/18/22, 405:6-19. Kirkpatrick stammered that the private benefit was "influencing" the San Francisco police officer. But what was she trying to "influence" the police officer to *do*, other, perhaps, than to show her some degree of respect, rather than acting on his implicit bias. But of course Kirkpatrick did not want to say that out loud, because it would have made explicit the racial dynamic that appears to have been at play, nor did she want to say that the "private benefit" was getting her own son released into her custody, because she realized how absurd that contention would have sounded to the jury.

If Kirkpatrick herself could not explain what private benefit Harris was seeking, and her report made no mention of any such private benefit, then she could not have reasonably believed that her report *disclosed* any unlawful conduct.

---

[6] This is just one of many examples of the degree to which Plaintiff's claims rest on no foundation beyond her own *ipse dixits*. Her reports are "whistleblowing" because she now *says* that they are. She sent them in her private capacity, rather than in her role as Police Chief, because she *says* that she did. The Commissioners retaliated against her because, *according to her*, they would have had no legitimate reason to terminate her.

It is often difficult to know exactly what Kirkpatrick is trying to say, because she is such an skilled practitioner of the bureaucratic arts of indirection, deniability and avoidance of responsibility. But it is clear that none of her reports accuse Harris of seeking to use her official position in order to obtain a personal benefit — not with respect to the NSC meeting, not with respect to the **Tow Incident**, and not with respect to the **School Incident** — and it is equally clear that Kirkpatrick did not reasonably believe that she was making a report of any "public corruption." She was, of course, making reports of *something*. But what she was reporting was what she regarded as Harris' rude, bullying behavior, conduct of which she repeatedly accused Harris (and other Police Commissioners). The reports did not amount to disclosures of unlawful conduct under Section 1102.5, and there is no sufficient evidence to support the claim that she reasonably believed they did.

### III. THERE WAS NO FIRST AMENDMENT-PROTECTED ACTIVITY.

#### A. Plaintiff Spoke As An On-Duty Police Chief, Not A Private Citizen.

The Section 1983 claim asserts that Kirkpatrick was retaliated against because of her exercise of her First Amendment rights. But her reports were plainly made in her official capacity as Police Chief, and they were therefore not an exercise of those rights. That's the reason, of course, that she was so adamant about making her awkward, and entirely implausible, distinction between her official duties and her "private citizen" reports. Tr. 5/18/22, 354:10-22; 402:21-403:4.

Kirkpatrick's lack of credibility on this issue is not the subject of this motion, however, because the Court is not empowered to make credibility determinations on a Rule 50 motion. The Court is, though, empowered to determine whether a reasonable jury would have a legally sufficient evidentiary basis to find for Plaintiff on the First Amendment claim.

"To establish a prima facie case of First Amendment retaliation, a plaintiff must prove that (1) she engaged in protected speech; (2) the defendants took an adverse employment action against her; and (3) her speech was a substantial or motivating factor for the adverse employment action." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1044 (9th Cir. 2017) (internal quotations and citations omitted). In evaluating a First Amendment retaliation claim, the Court considers "a sequential five-step series of questions[.]" *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

First, the plaintiff bears the burden of showing: "(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; [and] (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action[.]" *Id.*

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1068 (9th Cir. 2013) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). Plaintiff bears the burden of establishing that she "had no official duty to make the questioned statements" or that "the speech was not the product of performing the tasks the employee was paid to perform." *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1127 n.2 (9th Cir. 2008) (internal quotations, marks, and citations omitted); *see also, e.g.*, *Pyke v. Arcadis, US Inc.*, 35 F. Supp. 3d 1093, 1100–01 (N.D. Cal. 2014) (Breyer, J.), *aff'd*, 649 F. App'x 593 (9th Cir. 2016) (granting summary judgment against public-employee plaintiff because his email was (1) confined to his chain of command; (2) the subject matter of the email was typical of his job duties; and (3) he did not speak in contravention of his supervisor); *Clark v. City of Oakland*, No. C 06-06872 CRB, 2008 WL 2357321, at *7 (N.D. Cal. June 6, 2008), *aff'd*, 385 F. App'x 665 (9th Cir. 2010) (summary judgment appropriate for employer because the speech was "a personnel grievance" brought to a supervisor in a close-door meeting).

The fact that Plaintiff was serving as the Police Chief at the time she made every one of her reports is utterly inconsistent with her claim that some of them were made in her capacity as a private citizen. She had a duty to pass along information when it came to her attention; she did so. Tr. 5/18/22, 480:20-481:5; 481:7-24.

A police chief who, having received information in her official capacity, then passes it along to other city officials— to all appearances, again in her official capacity— without any statement or notice that she has figuratively doffed her uniform while at her keyboard, should not be heard to claim that she was acting as a private citizen. No one who received Kirkpatrick's

///

emails had any idea that she was not speaking in her role as chief, and no social or judicial purpose would be served by allowing her to game the system in the manner she is attempting.

### B. Plaintiff's Reports Did Not Encompass Matters Of Public Concern.

The First Amendment protects government employees from termination because of their speech on matters of "legitimate public concern." *Pickering v. Bd. of Education*, 391 U.S. 563, 571 (1968). Public employees, by virtue of their public employment and access to information, are in a unique position to make valuable contributions to public debate. *Id.* at 572. However, "[t]o presume that all matters which transpire within a government office are of public concern would mean that virtually every remark — and certainly every criticism directed at a public official — would plant the seed of a constitutional case." *Connick v. Myers*, 461 U.S. 138, 149 (1983). Therefore, absent extraordinary circumstances, constitutional protection is unavailable "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." *Id.* at 147.

Plaintiff's reports concerned matters of personal interest, not public concern: workplace dynamics and her efforts to limit the Police Commission's authority. *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Cir. 2009) (speech is not of public concern where it "relates to internal power struggles within the workplace"). Plaintiff's characterization — that her "reports described unlawful conduct, exposed public corruption, and laid bare abuses of power" by the Police Commission (Dkt. 153) — is just rhetoric, backed by no substance.

"[S]peech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern." *Id.* (citations and quotation marks omitted). The same is true of "speech that relates to internal power struggles within the workplace," and speech which is of no interest "beyond the employee's bureaucratic niche." *Tucker v. State of Cal. Dep't of Educ.*, 97 F.3d 1204, 1210 (9th Cir. 1996) (internal quotation marks and citation omitted). Furthermore, "when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter

of public concern." *Johnson v. Multnomah Cty.*, 48 F.3d 420, 425 (9th Cir. 1995). As the Ninth Circuit noted in *Desrochers*, "not all comments on perceived deficiencies in the functioning of a government office amount to speech on a matter of public concern." 572 F.3d at 711 n. 7.

### 1. The Reports Do Not Address Matters Of Public Concern.

Plaintiff testified that her reports documented instances in which Police Commissioners tried to leverage their public positions in order to obtain private benefits. Tr. 5/17/22, 267:22-25; 269:20-270:2; Tr. 5/18/22, 404:19-25. The reports themselves belie that characterization. TX0012, TX0013, TX0256, and TX0164. Nothing in these reports suggests or identifies a violation of Oakland Municipal Code Section 2.25.060(A)(2) ("OMC § 2.25.060"), or of any other law or regulation.

As to the **NSC Incident**, nothing in the email suggests that the Commissioners were seeking a "private advantage, benefit, or economic gain" (as OMC § 2.25.060 requires). TX0012. The Commissioners' purpose in meeting with the NSCs was to learn about the Neighborhood Services program and identify areas for improvement. In the course of that meeting, Commissioners Dorado and Harris naturally brought to the attention of the Neighborhood Services Coordinators issues affecting their respective *neighborhoods*. It is not a matter of public concern that Commissioner Harris complained to the NSCs about a lack of attention to matters affecting her neighborhood, and that is all the report "discloses".[7]

Plaintiff argues that the **Tow Incident** involved an effort by Commission Harris to use her status as a Commissioner to avoid her tow fee. But the text of Plaintiff's email says only that Commissioner Harris told records staff that "my car should not have been towed," and that she "was not going to pay the fee" and was going to the "chief of police" about it. TX0013. A member of the Police Commission, like any member of the public, can complain about an unfair tow, but having one's car towed — and being irate about it — is still a matter of private, not public, concern. The email also says that Plaintiff "perceive[d] this communication as bullying behavior" TX0013-0001), but "when working for the government, saying one's boss is a bully does not

---

[7] *See* footnote 4, above.

necessarily a constitutional case make." *Desrochers*, 572 F.3d at 713. In determining whether speech is a matter of public concern, courts "look to what the employees actually said, not what they say they said after the fact." *Id.* at 711. What Plaintiff actually wrote at the time raised no matter of public concern, not, at least, about Ms. Harris. Whether it raised a public concern about *Kirkpatrick's* conduct is another question entirely.

Likewise, Plaintiff's "report" concerning the **School Incident** discloses no issue of public concern. TX0256. The San Francisco police report itself only says that Commissioner Harris identified herself as a police commissioner. TX0938. Plaintiff was unable to say what private or personal benefit Harris was attempting to achieve, other than "to influence" the San Francisco police officers. But influence to do what, exactly? Too provide her with what private benefit? She couldn't say.

Plaintiff suggests that, because her reports "raised concerns" about "Police Commissioners misusing their official positions to obtain personal benefits," her speech is necessarily one of public concern. But the reports themselves did not identify such concerns

### 2. The Reports Were Internal Government Communications.

Speech directed to a private audience, rather than to the public or the media, weighs against a claim of protected speech. *Desrochers*, 572 F.3d at 714 (quoting *Roe v. City & County of San Francisco*, 109 F.3d 578, 585 (9th Cir. 1997)). Plaintiff's reports were sent confidentially to Cit officials not to the public. "Public employee speech is 'of public concern' if it helps citizens 'to make informed decisions about the operation of their government.'" *Roe v. City & County of San Francisco*, 109 F.3d at 585. Nothing in the reports served *that* purpose, because they were internal government communications.

### 3. The Reports Were Motivated By Bureaucratic Infighting, Or Reporting Requirements.

Finally, the context weighs against a finding of public concern. In ascertaining when speech rises to a level of public concern, the court looks to the *point* of the speech — "[i]n other words, why did the employee speak (as best we can tell?)" *Desrochers*, 572 F.3d at 715. Plaintiff testified about her civic-minded motivations for these reports. But that information is wholly

absent from the actual reports, which suggest the exact opposite—that Plaintiff was "moving [the **NSC Incident**] up to the level" of the City Administrator and City Attorney in a two-line email (TX0012); that she was "forwarding [City officials] this string of emails" regarding the **Tow Incident** to protect her or her staff (TX0013); and that, concerning the **School Incident**, she and her colleagues at OPD were "not certain where to send this complaint so we have forwarded to all of you for follow up." TX0256. Plaintiff's reports do not contain a single idea, belief, or position on her part regarding any improper conduct — they merely *forward* information (and not even the ideas, beliefs, or positions of others) internally up the chain.

Plaintiff's reports were made in the context of her ongoing rivalry with the Police Commission. To determine the context of the speech, an inquiry into the employee's motivation for making the speech is highly relevant. *Desrochers*, 572 F.3d at 714 (citing *Gilbrook v. City of Westminster*, 177 F.3d 839, 866 (9th Cir. 1999)). Plaintiff had a difficult working relationship with the Police Commission, and she had no respect for Commissioners Dorado and Harris. "When a public employee's contested speech occurs in the context of an internal power struggle or personal employment grievance, this will militate against a finding of public concern." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1104 (9th Cir. 2011) (citing *Desrochers*, 572 F.3d at 715).

## IV.  THERE WAS NO RETALIATION.

The Mayor and the Commissioners have testified to their reasons for deciding to terminate Plaintiff as Oakland's Police Chief. Tr. 5/20/22, 659:18-660:11. They had nothing to do with any whistleblowing or First Amendment activity. The Commissioners never saw the reports. And there is no contention that the Mayor herself was motivated to retaliate. No legally sufficient evidence supports the claim that "protected activity" was a "contributing factor" in the termination decision. *Lawson*, 12 Cal. 5th at 711. Plaintiff's burden was to present "substantial evidence" rather than "suspicion, imagination, speculation, surmise, conjecture or guesswork." *McRae v. Dep't of Corr. & Rehab.*, 142 Cal. App. 4th 377, 389, 398 (2006) (overturning jury verdict in favor of employee, because employee had only offered "her belief that the defendants had retaliated against her and were lying about their motivation . . . [employee's] beliefs are not substantial evidence of defendants' motivation."). She failed to do so.

Plaintiff has argued that she can meet her causation burden just by showing some degree of temporal proximity between her reports and the termination vote. But (a) that is not the law (see *Wiele v. Delaware N. Companies, Inc.*, No. 2:21-cv-07271-SB-AS, 2022 WL 714392, at *7 (C.D. Cal. Mar. 4, 2022), and (b) she has not shown any proximity between any decisionmaker's *awareness* of her reports and his or her decision. To the contrary, there has been a complete failure of proof on which a jury could find that the Police Commissioners had even seen Kirkpatrick's reports as of February 20, 2020.

### A. The Commissioners Were Not Aware Of Any "Whistleblowing" Reports.

The Commissioners had not seen the reports when they made their decision on February 20, 2020. *See, Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 69 (2000) ("In the absence of evidence that the individuals who [made the adverse employment decision] were aware of [a] past filing of a grievance, the causal link necessary for a claim of retaliation cannot be established.").

In *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1239 (9th Cir. 1994), the Ninth Circuit recognized that, where a municipal body requires a majority vote to act, a plaintiff must establish either that a majority acted with retaliatory intent, or that the "[body] as a whole took the action" with retaliatory intent. *Id.* (affirming grant of summary judgment). In *Scarbrough v. Morgan County Board of Education*, 470 F.3d 250, 262 (6th Cir. 2006), the Sixth Circuit expressly adopted the Ninth Circuit's "but for" approach over a competing option that would require a plaintiff to establish both: "(a) bad motive on the part of at least a significant block of legislators, and (b) circumstances suggesting the probable complicity of others." *Id.* at 262 (citation omitted). *Scarbrough* ultimately decided that liability exists only "where improperly motivated members supply the deciding margin . . . ." *Id.*

The Police Commissioners knew that there had been friction, or dust-ups, between Plaintiff and Commissioner Harris — the **Tow Incident** and the **School Incident** — but they did not know that Kirkpatrick had submitted reports accusing Harris of public corruption.

Under Measure LL, the votes of five Police Commissioners and the Mayor were required to terminate Plaintiff without cause. TX0008. The termination could not have occurred without the

Mayor, yet no evidence supports a finding that any protected disclosures contributed to the Mayor's vote.

### B. The Reports Did Not Contribute To The City's Decision.

Putting aside the fact that the Police Commissioners had not seen the "whistleblower" reports, those reports were made between four and twenty-three months before the termination. The Ninth Circuit has "repeatedly found that durations of four months and greater between the protected activity and termination are too remote to support a finding of causation based on temporal proximity." *Canupp v. Children's Receiving Home of Sacramento*, 181 F. Supp. 3d 767, 793 (E.D. Cal. 2016) (quoting *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002)); *accord Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (affirming summary judgment for defendant where four months elapsed between Title VII plaintiff's protected activity and his termination).

The only two "disclosures" within any reasonable proximity to the termination decision were the **School Incident** (November 2019) and the **Formal Complaint** (October 2019). By that time, of course, the Commission had *already* voiced concern with Plaintiff's performance. And the **Formal Complaint**'s recitation of the prior complaints is legally irrelevant. *CTC Glob. Corp. v. Huang*, No. SACV 17-02202 AG (KESx), 2019 WL 4164971, at *3 (C.D. Cal. July 29, 2019) ("The Court doesn't consider Huang's 'reiteration' of earlier concerns to be a strong new basis for retaliatory intent, nor have other courts in this district analyzed causation in this manner.").

## CONCLUSION

There is no legally sufficient evidence to support a jury finding in Plaintiff's favor on either of her claims. The Court should grant this Rule 50(a) motion.

DATED: May 25, 2022

Respectfully submitted,

COBLENTZ PATCH DUFFY & BASS LLP

By: */s/ Jonathan R. Bass*
JONATHAN R. BASS
Attorneys for Defendant
CITY OF OAKLAND